MARY A. MILLER *v.* JOHN C. MILLER.

*Divorce from Bed and Board—Construction of Statute—Indignity Offered by Husband.*

1. To entitle a wife to a divorce from bed and board under Bat. Rev. ch. 37, § 5, (4), the indignity offered by the husband must be *such as may be expected seriously to annoy a woman of ordinary good sense and temper*, and *must be repeated*, or continued in, so that it may appear to have been done *wilfully and intentionally* or at least *consciously* by the husband to the annoyance of the wife.

2. In an action by the wife for divorce from bed and board, where it appeared that the husband, at various times in the absence of the plaintiff, had had carnal intercourse with a female servant in his bed chamber, from which she became pregnant; *It was held*, that the plaintiff was not entitled to the relief demanded.

(*Everton* v. *Everton*, 5 Jones 202, cited and commented on.)

(READE, J. *Dissenting.*)

CIVIL ACTION for Divorce *a mensa et thoro*, tried at Fall Term, 1877, of ROWAN Superior Court, before *Cox, J.*

The plaintiff alleged among other things that she suspected the defendant of improper intimacy with one Louisa Nash who was introduced by the plaintiff as a witness and testified (as stated in the case) that she lived as a servant in the family of plaintiff and defendant, and that during the absence of the plaintiff from home she had carnal intercourse more than once with the defendant in his bed chamber, and that she became pregnant by defendant. During her pregnancy the plaintiff asked her what was the matter with her, and she replied that she was pregnant by defendant; and as soon as the plaintiff heard this statement she proceeded to leave defendant's house. On the cross-examination of this witness, the defendant proposed to prove by her,—that as soon as the plaintiff heard that witness was pregnant by defendant and when plaintiff was preparing to leave, he begged her not to leave, and promised if she

would remain with him, he would never be guilty of any other infidelity towards her, and that the plaintiff left immediately thereafter,—to which the plaintiff objected, which objection was overruled by His Honor, and the witness testified as above stated ; and that plaintiff did leave notwithstanding the entreaties and promises of reformation by defendant. Witness further testified that she thereafter left defendant's house, but returned several months since and lived in an out house of defendant about 100 yards from defendant's dwelling house, and that after the separation of plaintiff and defendant she had never on any occasion had carnal connexion with the defendant. Leah Quillman, a witness for the plaintiff, testified that the defendant only permitted said Louisa to return to his premises after applying in vain to her (witness) to give her shelter, when she advised defendant to take her himself, which he consented to do, remarking at the time, that he must provide for his child. There was no evidence that when plaintiff separated from defendant she knew or was informed that criminal intercourse as aforesaid had occurred in the bed chamber of the parties when they lived together. The plaintiff has ceased to live with her husband or on his premises ever since she heard of said adultery.

The plaintiff asked the Court to instruct the jury that the conduct of the defendant in having frequent connexions with said Louisa in the private bed chamber, and his subsequent conduct in bringing said Louisa to live on the premises, were such indignities offered to plaintiff as to render her condition intolerable and life burdensome. This, His Honor declined, but charged the jury that it was for them to say from all the evidence whether the defendant had offered such indignities to the plaintiff as to render her condition intolerable and life burdensome. Plaintiff excepted.

Issues raised by the pleadings were then submitted to the

jury who found, (1) that the parties were husband and wife and lived in this State three years immediately preceding the commencement of this action, (2) that defendant did commit adultery with Louisa Nash at the house of plaintiff and defendant, (3) that defendant did not treat plaintiff with such cruelty and indignity as to compel her to separate from him and to leave his bed and board, (4) that defendant did not live in adultery with said Louisa after said separation, and (5) that defendant did not offer such indignities to the person of the plaintiff as to render her condition intolerable and life burdensome. Judgment for defendant. Appeal by plaintiff. (See *Morris* v. *Morris*, 75 N. C. 168, and *Long* v. *Long*, 77 N. C. 304.)

*Mr. W. H. Bailey*, for plaintiff: The words "indignities to the person" are not confined to personal assaults; cruelty *per se* is provided for as a distinct cause by (3) *expressio unius* &c. 1 Bish. Mar. & Div. § 735; *Popkin* v. *Popkin*, 3 Eng. Exc. 324; *Coble* v. *Coble*, 2 Jones Eq. 392; *Everton* v. *Everton*, 5 Jones 202; *Hansley* v. *Hansley*, 10 Ire. 506; *Lynch* v. *Lynch*, Phil. Eq. 46; *Lytle* v. *Lytle*, 63 N. C. 22. What constitutes such "indignity" as is specified in the statute is a question of law and not a question of fact. *Harrison* v. *Harrison*, 7 Ire. 490; *Smith* v. *Smith*, 72 N. C. 159.

*Mr. J. M. McCorkle*, for defendant: Decrees for divorce are not favored by the Courts. *Whittington* v. *Whittington*, 2 Dev. & Bat. 68. Giving a loathsome disease to wife not a ground for divorce *a mensa et thoro*. *Long* v. *Long*, 2 Hawks. 189. Indignity to person defined by this Court in *Coble* v. *Coble*, 2 Jones Eq. 392, and this definition sanctioned and affirmed in *Taylor* v. *Taylor*, 76 N. C. 436. Whipping wife under some circumstances no ground for divorce. *Joyner* v *Joyner*, 6 Jones Eq. 322. If jury decide correctly a question of law improperly left to them, the verdict cures the error of the Court. *Glenn* v. *Charlotte & S. C. R. R. Co.*, 63 N. C. 510.

RODMAN, J. By the law of this State, a divorce from the bonds of matrimony shall be granted to a wife when her husband separates from her and lives in adultery. Bat. Rev. ch. 37 § 41. This Act has been on our statute book for many years. The statutes of perhaps most of our sister States are different. 1 Bish. Mar. & Div. § § 703–707. We have no occasion to defend the policy of our legislation, but we may express the belief that infidelity on the part of husbands is not more frequent here than elsewhere. It is agreeable also to find that the most recent legislation in England, the result of its most mature consideration and experience on this subject, is in principle the same with our own. The English statute may be found in 1 Bish. Mar. & Div. §85 note.

Our Act of Assembly further says; " § 5. The Superior Courts may grant divorces from bed and board on the application of the party injured * * * in the following cases : (1) If either shall abandon his or her family, or (2) shall maliciously turn the other out of doors, or (3) shall by cruel or barbarous treatment endanger the life of the other, or (4) shall offer such indignities to the person of the other as to render his or her condition intolerable and life burdensome, or (5) shall become an habitual drunkard."

The plaintiff does not claim a divorce a vinculo; but it is contended for her, that the conduct of the defendant has been such as to bring him within the fourth of the above grounds for a divorce from bed and board; and that the adultery of the defendant under the circumstances attending it, was such an indignity to her person as did in contemplation of law render her condition intolerable, &c. It has not been contended here that the indignity intended by the Act must necessarily be one to a wife's body. It is conceded that there may be offences to the mental and moral sensibilities of a wife, of such a character and under such circumstances, that if continued, they will amount to

cruelty, which in the sense in which the word is used in the law of England, and generally in that of the United States, is the equivalent expression for what is called in our statute, "such indignities as render her condition intolerable, &c." 2 Wait. Actions & Def. 560, 561. An instance of such an offence would be the keeping of an abandoned woman in the house in which the husband and wife resided, and thus forcing the wife either to abandon her home or to submit to an association repugnant to her affections, her virtue and her self-respect. Such conduct as this might also come under the second clause. Other examples less strong but sufficient without violence to the person to constitute manifest cruelty may be supposed. One of such is found in the recent English case of *Kelly* v. *Kelly*, 2 Prob. & Div. 59; 1 Bish. Mar. & Div. § 783. Another might be found in the case of *Everton* v. *Everton*, 5 Jones 202. In this case, however, although decided as late as 1857, it was held that the diversion of the husband in shooting one negro woman, the property of the wife, and whipping sundry others of his own, in close proximity to the chamber in which his wife was lying sick in bed, was not cruelty. This case is very far behind all the modern decisions on this subject, and would scarcely be decided in the same way at the present day.

It would be impossible, and we shall not undertake to decide with any precision the course of conduct which will amount to legal cruelty, or to "indignities, &c." within the meaning of the Act. But it may confidently be said, that the indignity, whatever may be its form or nature, must be *such as may be expected seriously to annoy a woman of ordinary good sense and temper.* If from bad health the wife is morbidly nervous or sensitive, that must be allowed for. But as nothing of that sort is alleged in this case, such a supposition may be omitted from our consideration. Generally speaking, the conduct of the husband must be such as

might reasonably be expected to annoy a woman of an ordinarily sound and healthy nature. *It must be repeated* or continued in, so that it may appear to have been done *wilfully and intentionally,* or at least *consciously* by the husband, to the annoyance of the wife. He must have reason to believe that his act or course of conduct will greatly and naturally annoy his wife, and must persist in it regardless of such annoyances.

We think the above rule is as favorable to the plaintiff as she can reasonably be thought entitled to. It is perhaps more so than is quite consistent with the authorities. If the case of *Everton* v. *Everton* is entitled to any weight at all, it establishes a rule much harsher than this; and the cases of *Butler* v. *Butler,* Parsons Sel. Eq. Cases, 329, and *Kelly* v. *Kelly,* 2 Prob. & Div. 59, which are the most modern cases on this subject, and the most favorable to the plaintiff of any which I have found, say, that the annoyance to the feelings of the wife must, either from its character or its persistency, endanger her life or health. See 2 Wait. A. & D. 564; *Powelson* v. *Powelson,* 22 Cal. 358; *Gholston* v. *Gholston,* 31 Ga. 625. Tested by this rule, the case of the plaintiff of course fails; for it is not alleged that her feelings have been shocked to the degree of endangering her life or health.

The question then is: Can the plaintiff's case be brought within the very favorable rule which we have supposed to be applicable to such cases? The acts of adultery, by the husband were repeated at intervals during a period of less than nine months, and resulted in the pregnancy of the female servant; but they were all committed during the absence of the wife from her home, and never came to her knowledge until, seeing the condition of the servant, she inquired into the cause of it, and upon being informed, she immediately left her husband's house, and has never since returned to it.

In estimating the alleged indignity, I dismiss from consideration, that it was committed in the bed room in which the husband and wife slept when she was at home, as being a mere poetic and fanciful, and not a real aggravation. Whatever weight might be assigned to it, it was unknown to the plaintiff until after this action was brought. After the offence of the husband became known to the wife, it was never repeated, and the husband entreated forgiveness and promised future fidelity. It is evident that the case does not come within the principles which we have supposed should apply. The conduct of the husband, though immoral and blamable, was only such as many a sensible and good-tempered wife has thought it wise, and dutiful, and according to the impulses of her heart, to be blind to, or generously to forgive. The husband's conduct was not *consciously or wilfully* to the annoyance of the wife. His acts were not intended or expected to annoy her, for he never expected her to know of them. The indignity to her feelings was not wilful on his part, but accidental, resulting from her inquiries which were not anticipated by him.

We cannot think the defendant's conduct, however reprehensible, was such "indignities" as was intended to be covered by the statute, or was calculated to render the condition of any reasonable woman "intolerable, or her life burdensome." This is not a case in which the law ought to interfere to sanction, and perhaps perpetuate, the separation of a married pair who may again unite without impropriety, and without the loss of self-respect on the part of either, and taught by experience, may live henceforth happily together. An English poet once gave advice to husbands, which Lord Chatham made immortal, even if its own good sense had not otherwise have served to make it so, by quoting it in one of his great speeches on the policy of Britain towards America. The advice will equally teach wives how to manage their husbands:—

> "Be to his faults, a little blind,
> Be to his virtues, very kind,
> And clap your padlock on his mind."

Judgment affirmed and action dismissed.

PER CURIAM.                    Judgment affirmed.