## CLINE v. CLINE.

DIVORCE—PERSONAL INDIGNITIES.—That condition which renders the life of the injured party burdensome must be shown to exist in fact, and not purely inferred from facts that go to establish personal indignities.

APPEAL from Multnomah County.

*Bellinger & Gearin,* for appellant.

*Effinger & Bourne,* for respondent.

By the Court, WALDO, J.:

A dissolution of the marriage contract may be declared at the suit or the claim of the injured party for (sub. 6, sec. 491, civil code,) "cruel and inhuman treatment or personal indignities rendering life burdensome." This suit is brought under this provision of the statute. Besides the testimony of F. Behl, which is without relevancy to the issues, there were but two witnesses on the part of the respondent—the respondent, herself, and her daughter of twelve years of age.

The testimony of the daughter is the evidence on which a cause of suit is sought to be made out. This daughter testifies to certain lewd and indecent conduct of the appellant toward her, of which she afterward told her mother, who thereupon immediately left the appellant and began this suit. Mrs. Fostner, daughter of the appellant by a former marriage, testifies that she firmly believes that this tale of the respondent's daughter and the separation alleged to have happened in consequence, was a scheme devised by the respondent to get hold of a share of the appellant's property, through the proceedings for a divorce, and the subsequent offer of reconciliation and other slight circumstances, gives some color to this view. Christina Gosner testifies to admissions of the respondent that she married appellant for his money, and it appears from the testimony of the respondent herself that the deed of a house and lot would have given satisfaction for all the suffering caused by the personal indignities to which she had been subjected.

But every word of the daughter's testimony may be conceded to be true and yet a cause of suit be not made out. It shows neither cruel nor inhuman treatment nor personal indignities offered to the respondent by the appellant. There is no evidence of cruel treatment. In *Kennedy* v. *Kennedy*, Church, C. J., cites and approves the following definition of cruelty: "There must be either actual violence committed with danger to life, limb or health, or there must be a reasonable apprehension of such violence." (See, also, *May* v. *May*, 62 Pa. St., 210; *Jones* v. *Jones*, 66 *id.*, 496; *Finley* v. *Finley*, 9 Dana, 52; *Shell* v. *Shell*, 2 Sneed, 716; *Close* v. *Close*, 9 C. E. Green, 239.) There seems no reason under our statute for enlarging on this definition.

The cause of suit must be made out, if at all, on the ground of personal indignities offered to respondent's person

by appellant, and having the effect to render her life burdensome. In *Richards* v. *Richards*, 37 Pa. St., 227, Lowrie, C. J., says: "Though the judge speaks of the general conduct of the husband, yet we understand his relevant instruction to be that if the pulling of the wife's nose was done in rudeness and in anger, in a coarse, vulgar and harsh manner, there should be a verdict in her favor. This is substantially the very error that caused the former reversal. It is an instruction that utterly overlooks the act of the assembly defining the causes of divorce, and adopts in its stead a little misplaced chivalry. By such an instruction, he has required the jury to find that by once rudely pulling his wife's nose he has offered such indignities to her person as to render her condition intolerable, and life burdensome, and thereby forced her to withdraw from his house and family. He had no authority to give such an instruction. As we said before, he ought rather to have said the contrary. No one doubts that the act was unlawful, and we do not even find fault with its being barbarous, but it is not all unlawful and barbarous acts that are made grounds for divorce. It is not of a single act that the law speaks in the clause under which this case falls; but of such a course of conduct or continued treatment as renders the wife's condition intolerable, and her life burdensome. Such treatment has not been found by the jury under the instruction complained of. We shall not volunteer to say what will amount to this; but it is important to say that it is not under the lead of any chivalric sentiments that it is to be decided, but under the guidance of cautious and deliberate reflection. We do not divorce savages and barbarians because they act as such toward each other. We can exercise no sound judgment in such cases without studying the acts complained of in their connection with the character of the parties, and for

this we want the common sense of the jury rather than fixed legal rules."

The character of the parties must in all cases be taken into consideration when cruel and inhuman treatment or personal indignities are alleged as grounds for divorce. (*Harper* v. *Harper*, 19 Mo., 357; *Bailey* v. *Bailey*, 97 Mass., 380.) It follows, that that condition which renders the life of the party injured burdensome, must be shown to exist in fact, and not purely inferred from facts that go to establish personal indignities. The case of respondent fails in this particular, had facts tending to prove personal indignities been proven. But the indecent conduct of the appellant toward the respondent's daughter is not a personal indignity to the mother within any legitimate meaning of the words.

In *Coble* v. *Coble*, 2 Jones Eq., 395, Battle, J., says: "What is an indignity to the person? Indignity is defined by Webster to be, 'Unmerited contemptuous conduct towards another; any action towards another which manifests contempt for him; contumely, incivility, or injury accompanied with insult.'" See the opinion of the same judge in *Everton* v. *Everton*, 5 Jones L., 210.

In *Miller* v. *Miller*, 78 N. C., 102, it was held that adultery committed by the husband with the servant girl during the absence of the wife from home, was not an indignity to the person of the wife within the statute. This case is in point and in principle decisive of the case before us. It also shows that it is altogether important not to overlook the intent with which an act alleged to be an indignity is done. The decree should be reversed.

Decree reversed. LORD, J., concurs in the result; WATSON, C. J., dissents.

WATSON, C. J.:

Ever since the decision in *Smith* v. *Smith*, 8 Or., 101, the doctrine of this court has been, as I understand it, that "cruelty or personal indignities rendering life burdensome" through their operation upon the mind and feelings, constitute a sufficient ground for divorce under the statute, although not affecting or endangering the bodily safety or physical health of the complainant. But a majority of the court are of the opinion that assuming this to be the law, the evidence fails to show that the life of the complainant in this instance was rendered burdensome, in fact, by the indignities charged and proven. The facts in the case, as established by the evidence, appear to be about these: The parties intermarried on December 5, 1877, and lived together as husband and wife until about February 8, 1882, in Portland, Oregon, when the respondent, Mrs. Cline, left the appellant's house and instituted this suit. At the time of the marriage, the respondent had a daughter, then in her ninth year, named Ella Wertley, who was under her custody and dependent upon her for support. The complaint charges the appellant with having taken advantage of the youth and innocence of this child during the period that the parties lived together as husband and wife, to make the most indecent exposures of his person to her, and to endeavor to corrupt her mind and induce her to have sexual intercourse with him; and with having made repeated attempts to accomplish this design.

The testimony of the child, taken during the year 1882, fully sustains this charge. She testifies to a long series of such acts, on the part of the appellant, commencing soon after her mother's marriage with him, and extending up to about the time her mother left him, in February, 1882.

If her testimony is to receive credence, the appellant was persistently endeavoring, during almost this entire period, to corrupt her mind by representations of the rightfulness as well as the pleasure of having sexual intercourse with him, and by taking familiarities with her private person, and causing her to take similar liberties with himself; that he repeatedly attempted to have sexual intercourse with her; and that she was induced by appellant's threats to keep his conduct towards her secret from her mother, until the evening before her mother left him, as before stated. The appellant admits in his testimony that the child has taken the most indecent liberties with his person, but contends that it was without procurement or countenance on his part. But he also admits that he suffered her to caress him on such occasions, both before and after, and returned her embraces. He says that he did not tell her mother of this misconduct on her part because he did not wish to create any disturbance between them; that the mother was "so wrapt up in the child." The testimony of the child, corroborated as it is, by these important admissions of the appellant, must, I think, be held sufficient to establish the charges made against him in the complaint. The question then arises whether these facts constitute a case of "cruel and inhuman treatment, or personal indignities rendering life burdensome," under the law?

I think the case is within the operation of the statute, under the construction put upon it by this court in *Smith* v. *Smith*, 8 Or., 101, and which has ever since been recognized as the established doctrine in this state. It is difficult to conceive of an indignity to the wife and mother more galling and intolerable. It is idle to suppose that the knowledge of such conduct, on the part of her husband, and the step-father of her infant daughter—a mere child, living

under the same roof, and wholly dependent upon her for protection and support—might not have wounded her sensibilities, and rendered her life with him burdesome. And the appellant has himself testified that the respondent was "so wrapt up in the child" was one reason he did not inform her of the latter's misconduct.

In my judgment, the decree of the circuit court granting the divorce as prayed for in the complaint, was not only just, but fully warranted by the law and the facts.