Submitted on briefs February 19, reversed May 27, 1924.

## W. L. CAIN *v.* MARIAN M. CAIN.

(226 Pac. 230.)

**Divorce—Sufficient Cause must be Clearly Proved.**

1. The trial judge should refuse decree unless satisfied of truth and sufficiency of evidence.

**Divorce—Evidence Held not to Show Cruelty and Inhuman Treatment.**

2. Evidence *held* insufficient to warrant decree of divorce to husband for cruel and inhuman treatment and indignities.

**Equity—Husband, Refusing to Allow Wife to Visit Sick Child, Does not Come into Equity With Clean Hands.**

3. Husband, refusing to allow wife to visit their infant son in his sickness, does not come into court of chancery with clean hands, as required of petitioner for divorce.

**Divorce—Rights of Government Considered.**
4. Divorce suit may be regarded as civil suit between plaintiff, defendant and government, rights of which, in protection of public interests and morals, should be considered by court.

From Douglas: J. W. HAMILTON, Judge.

In Banc.

REVERSED.

For appellant there was a brief over the name of *Mr. John T. Long.*

For respondent there was a brief over the name of *Mr. Carl E. Wimberly.*

BURNETT, J.—The husband plaintiff charges the defendant wife with cruel and inhuman treatment and personal indignities which he says have rendered his life burdensome. Specifying, he avers in substance that about 1916 she became very friendly with one Frank Green, receiving from him a present of a brooch and permitting him to visit her frequently at the home of the plaintiff and defendant in the absence of the former. Particularizing still further he says that she pretended to have lost the brooch and invited Green to accompany her in search for it and did not return until several hours later when she came back with one Rogers who visited her frequently at the home of the parties, in the plaintiff's absence and on one occasion accompanied her to a neighbor's home at night although the plaintiff was there and would have gone with her if he had been permitted to do so. He also charges that in June, 1918, she went to the home of one Smith to care for his wife during an accouchement of the latter and while staying there frequently took boat rides with Smith in the evening and at night

111 Or.—18

when there was no one else present. Afterwards, as he says, she purchased a fishing net, went down to Smith's and pretended to fish. He further charges that during the summer of 1919 she went to Portland, visited there for several weeks, associated with foreigners and permitted the children of the plaintiff and defendant to drink intoxicating liquors. Again he alleges that during May and June, 1920, she worked at the Tourists' Inn in Oakland, Oregon, staying there at night although her home was only about four blocks from the hotel, and while there, "as plaintiff is informed and believes and therefore alleges," frequently associated with one Fred Riley and permitted him to accompany her over to Smith's at night; and about June 13, 1920, she went to Elkton, Oregon, with Riley, staying at his home in the absence of his wife, leaving her own child at home sick.

For a separate cause of divorce, the plaintiff directly charges her with the commission of adultery with Charles Smith on August 8, 1920. Of course, the complaint avers the marriage of the parties, their residence in Douglas County, Oregon, and the issue of the marriage, two children, boys aged ten and eight years. The marriage, residence and birth of the children are admitted by the answer but the rest of the complaint in both counts is flatly denied by the defendant. In her answer she makes charges against the plaintiff of cruelty and inhuman treatment in that he would invite his male friends and associates to the home of the plaintiff and defendant, including Smith and Rogers mentioned in the complaint, and afterwards when he would become angry with her, would falsely accuse her of being intimate with them; that he failed and neglected

properly to support her and her children on account of which she was compelled to and did work out in order to obtain means to support herself and her children; and although she was compelled while working as a domestic at a hotel in Oakland, Oregon, to stay until a late hour at night, he would continually remain away from home leaving their children alone in the house until late at night. She also charges that since the commencement of the suit the plaintiff obtained an order of court awarding to him the custody of the minor children during the pendency of the suit; that one of the children contracted diphtheria; that the plaintiff refused to allow her to visit or care for the child and said that he would let the boy die before he would let him go back to his mother, the defendant. The defendant does not ask for affirmative relief but only for the dismissal of the suit, the restoration to her of the care and custody of the two minor children, for her costs and disbursements, and for such other relief as to the support of the minor children as the court may deem proper and equitable in the premises. The new matter of the answer is traversed by the reply.

The Circuit Court made findings of fact on the first cause of suit upon which a decree of divorce was granted in favor of the plaintiff, together with the custody of the minor children without costs or disbursements in favor of either party. As to the second cause of suit, namely, the commission of adultery, the finding was that the defendant was not guilty thereof. The defendant appealed.

1. In *Moore* v. *Moore*, 22 Tex. 237, the court said:

"The law has wisely enjoined upon the courts the duty of watching over these proceedings with the

greatest scrutiny and interposing to prevent abuses of the delicate and responsible power confided to them to dissolve the marriage contract. What shall be deemed sufficient cause of divorce must ever be matter of law, and the law has made it the duty of the judge to refuse a decree unless satisfied of the truth and sufficiency of the evidence by which those causes are established.''

With this precept in mind so aptly stated, we proceed to the consideration of the first cause of divorce, cruel and inhuman treatment and personal indignities, rendering life burdensome. The second cause, the charge of adultery, is not supported by the evidence and is without foundation. Accordingly, it may be utterly disregarded.

In *Knight* v. *Knight*, 31 Iowa, 451, the court speaking by Chief Justice Day said:

''Cruelty justifying a divorce is defined to be such conduct in one of the married parties as renders further cohabitation dangerous to the physical safety of the other or creates in the other such reasonable apprehension of bodily harm as materially to interfere with marital duty.''

*Ennis* v. *Ennis*, 92 Iowa, 107 (60 N. W. 228), was a case where the woman, like Penelope, had many suitors before her marriage to the plaintiff. Even to the very hour of her wedding she retained warm affection for another than the plaintiff, and married the plaintiff practically under protest. She made no secret of her fondness for the other man and for a time refused to live with her husband; but the court held, according to the syllabus, that ''conduct of a wife towards another man resulting in inattention to household duties and an unpleasant notoriety in the papers causing the unhappiness and ill health of a husband does not constitute inhuman treatment.''

In *Hancock* v. *Hancock,* 55 Fla. 680 (45 South. 1020, 15 L. R. A. (N. S.) 670), the acts of the defendant, charged as extreme cruelty, were averred to have consisted in her entering "into relations of the utmost intimacy with young men, such relations consisting of love-making and secret meetings and correspondence and your orator has reason to believe and does believe and so alleges that such intercourse was not pure and was in violation of the moral standards which should govern married people in their intercourse with others of the opposite sex." On an application, after default of the defendant entered, for reference to a master to take the testimony, the trial court refused the appointment and dismissed the bill. On appeal by the plaintiff, the court held that "divorce on the ground of extreme cruelty will be denied where there is no actual violence, unless the treatment or abuse or neglect or bad conduct complained of be such as damages health or renders cohabitation intolerable or unsafe or unless there are threats or mistreatment of such flagrant kind as to cause reasonable and abiding apprehension of bodily violence so as to render it impracticable to discharge marital duties. * * Mere indiscreet or imprudent conduct and relations with young men on the part of a married woman, all embraced under the general term 'flirting' is not cause for divorce." *Armstrong* v. *Armstrong,* 229 Mass. 592 (118 N. E. 916, L. R. A. 1918D, 426), was a case where the wife petitioned for a divorce alleging cruelty and abusive treatment. Her statement was that her husband "stayed away from her longer than he had ever in four years and went out many evenings"; that when she spoke to him about this he said "he had been going with a girl in Bos-

ton"; that she became unhappy, could not sleep, "had extreme attacks of vomiting," that "she expostulated with him and told him of her suffering" and he said he could not give up the girl; that she was worried, became sick, and has not yet completely recovered her health. The court, speaking by Mr. Justice CARROLL, after considering many precedents, concluded with this language:

"Neither words nor acts which do not involve physical violence inflicted on the other party are sufficient to constitute cruel and abusive treatment within the meaning of the statute unless it was shown that the language was uttered or these acts were committed with a malicious intent and for the purpose of injuring the libelant. As there was nothing to show such an intent, and none can be inferred from the evidence, the judge could not grant the divorce and was fully warranted in dismissing the libel."

In *Miller* v. *Miller*, 78 N. C. 102, it was held that adultery committed by the husband with the servant girl during the absence of the wife from home was not an indignity to the person of the wife within the statute. In *Cline* v. *Cline*, 10 Or. 474, in her cause of suit for cruel and inhuman treatment and personal indignities rendering her life burdensome, the plaintiff relied upon certain lewd and indecent conduct of the defendant towards the plaintiff's daughter of which she afterwards told her mother, the plaintiff, but the court held that this was not a personal indignity toward the wife and it was held further, in that same case, according to the syllabus, as follows:

"That condition which renders the life of the injured party burdensome must be shown to exist in fact and not purely inferred from facts that go to establish personal indignities."

2. There are many cases in the books where the conduct of the offending party, such as the complaint herein describes, is coupled with other acts directed personally against the plaintiff with the intention of vexing and annoying the plaintiff which, on consideration of the whole case, have been made grounds of granting the divorce; but as stated in *Armstrong* v. *Armstrong, supra,* there was present the element of malice or a desire to injure, vex or annoy the plaintiff. For instance, in *McClung* v. *McClung,* 40 Mich. 493, the husband not only advocated the doctrine of free love, but openly consorted with lewd women, and personally expressed to his wife his dislike of her and his preference for other women. There was the vice of bringing directly home to the wife in her person and presence, the guilty husband's avowal of his meretricious relations with other women and his special aversion to his spouse. In *Holmes* v. *Holmes,* a Louisiana case reported in 23 South. 324, the conduct of the husband in openly, publicly and notoriously associating with another married woman under suspicious circumstances during several years, culminated in an open conflict between the husband, the third party and his wife on a much frequented thoroughfare in a populous city. This element of personal conflict furnished the ingredient of malice necessary to constitute cruelty. In the instant case, there is no evidence of any opprobrious epithet directed toward the plaintiff nor any personal violence offered to him by the defendant. Indeed, there seems to have been no quarrel or violence of any kind between the parties. Notwithstanding his allegations, all the acts of which he now complains were committed during a series of years, always with his knowledge, without

the least element of concealment upon the part of the defendant, and often with his consent or acquiescence.

The son to whom intoxicating liquor was given while visiting in Portland testified on cross-examination that it was without the defendant's knowledge. It appears that Green, Smith and Rogers were intimate friends of both parties, invited by the plaintiff himself to their house on many occasions and that the plaintiff maintained friendly relations with them, even at the time of taking the testimony. Smith and his family were frequent visitors at the home of the plaintiff and defendant. It was with the consent of the plaintiff that she attended Mrs. Smith in confinement. She explains that she engaged in the fishing venture for the improvement of her health as well as for the profit to be gained. The wife of Smith testifies favorably for the defendant. The latter gives a credible and blameless explanation of every occurrence mentioned by the plaintiff. The most that can be said of the case is that she may have conducted herself in a manner that did not meet the censorious approval of her jealous husband. He was too weak to protest to the men against their conduct with her. On the contrary, he invited them to their residence and maintained friendly relations with all of them. It seems that he is visiting upon her the jealous anger he was afraid to express to the men he mentions instead of protecting her honor by measures against those men if any were requisite or appropriate.

As to the conduct with Riley, it is thus explained. Mrs. Riley was sick in Oakland and could not be moved. While she was there sick, her young child she left at home in Elkton was taken suddenly sick

and, at her request, the defendant, after consultation with her husband and with his acquiescence, went, accompanied by Riley and other people in a public conveyance and stayed at his residence in Elkton in company with other people, caring for the child until it improved so that she could return to Oakland. It is true that one of her own children had the mumps at the time, but had improved and her husband told her that if she thought it would be all right with her own boy, she could go and care for Mrs. Riley's child.

Moreover, the plaintiff has alleged that the conduct of the defendant has caused his life to become burdensome. His testimony on that point, in answer to his own counsel, is here quoted.

"Q. What effect did this conduct of Mrs. Cain have on you?

"A. It caused me when she came back to take charge of things, to pack my things and move out.

"Q. Caused you a great deal of worry, did it?

"A. Well, no. By this time I was used to it so I did not care very much.

"Q. But before that time, did it?

"A. Yes, I knew several years ago what would be the ultimate outcome of the whole thing."

3, 4. The plaintiff's conduct in refusing to allow the mother of his infant son to visit him in his sickness is reprehensible, so that he does not come into a court of chancery with clean hands. As stated by Mr. Justice WESTCOTT in *Underwood* v. *Underwood,* 12 Fla. 434,—

"It has been properly remarked that a divorce suit may be regarded as a civil suit between three distinct parties, the government, the plaintiff, and defendant. It is the office of the government to protect the interests of the public, the welfare of the entire community whose interests are involved,

and to see that public morals are protected and the rights of this party should never be forgotten by the court.''

It is not the office of the courts to assume censorship of the conduct of parties not within the causes of divorce prescribed by the statute and punish the one or the other by granting a decree. We may freely admit that the conduct of the defendant would not meet the approval of an old-fashioned prude or conform to the standards of propriety in vogue fifty years ago, but according to the authorities cited her acts do not constitute cruelty and inhuman treatment or personal indignities. Besides that, the allegation that they rendered the plaintiff's life burdensome is disproved by his own testimony.

The decree of the Circuit Court is reversed and the plaintiff's suit is dismissed at his cost.

REVERSED AND SUIT DISMISSED.