Argued July 24, reversed September 10, 1918.

## MOSIER v. MOSIER.

(174 Pac. 732.)

**Divorce—Sufficiency of Evidence—Cruelty.**

1. In husband's action for divorce, where both parties charged the other with cruelty, evidence *held* to show husband and wife equally at fault and subject to like criticism.

[As to cruelty as ground for divorce, see notes in 29 Am. Dec. 674; 73 Am. Dec. 619; 40 Am. Rep. 463; 51 Am. Rep. 736; 65 Am. St. Rep. 69.]

**Divorce—Parties Equally at Fault—Right to Divorce.**

2. In divorce action, where evidence showed both parties equally at fault, neither was entitled to divorce.

[As to recriminatory defenses in divorce suits, see notes in 15 Am. Dec. 211; 86 Am. St. Rep. 333.]

From Wasco: WILLIAM L. BRADSHAW, Judge.

Department 2.

This is a suit for divorce. The amended complaint alleges that the plaintiff and the defendant were intermarried at The Dalles, Oregon, in February, 1889; that there has been no issue of their marriage and:

"That about ten years ago the defendant complained that her rights in the property of the plaintiff were not properly protected, and demanded that the plaintiff deed to the defendant one half of all his property, the defendant claiming that by so doing she would become the owner of all the property at the plaintiff's death, which she claimed and demanded as her right, and that the (adopted) daughter of the plaintiff and defendant has no right to any portion of the plaintiff's property, either in his lifetime or at his death.

"That the defendant became very insistent upon her demands for the plaintiff's property, and in a violent and threatening manner asserted to the plaintiff that he never could get a divorce from her, but she could get a divorce from him, and that she would leave him and get a divorce from him unless he conveyed his property to her, and at other times she would threaten not to leave him, but to stay with him for the purpose of harassing, vexing, annoying and persecuting him, and stating that she would make life a burden to him, and that she would break him up in business and bring him to want, and at other times she would threaten to commit suicide if her demands were not granted by the plaintiff, and the defendant promised that if the plaintiff would convey his property to her that she would live with him and be entirely contented and would treat the plaintiff right and endeavor to make him happy.

"That by the threats of the defendant, who is a violent woman, and being intimidated by her threats and relying upon her promises of better treatment in case her demands should be granted, the plaintiff for these reasons and not otherwise yielded to the demands of the defendant and conveyed to her Block 9 in the town of Mosier, comprising about four acres, and

which would constitute about thirty-two town lots if subdivided, and which is of the value of ——.''

For such reasons the plaintiff thereafter caused to be conveyed to the defendant an undivided one-half interest in ninety-three acres of land in Wasco County, for which it is alleged that he paid the entire consideration.

The amended complaint then alleges that the defendant was not satisfied, but ever since

''has persistently and continuously demanded that the plaintiff deed to her an undivided one-half interest in all of his property of every kind, and frequently when the plaintiff would not grant her requests and demands the defendant has cursed and abused the plaintiff and called him vile, profane and opprobrious names, and has threatened to commit suicide if plaintiff did not grant her requests and demands and convey to her an undivided one half in and to all of the plaintiff's property.''

It is alleged that such demands and threats were frequent, that defendant would not live with plaintiff unless he granted them, and:

''In the last ten years the defendant has lived separate and apart from the plaintiff by far the greater portion of the time, and has lived in Portland, Oregon, and at the beaches and in the State of California and has only come to the plaintiff's home and lived with him at such times as were convenient for the defendant, and at such times that she wished to press her demands above mentioned, and to torment, harass, vex and annoy the plaintiff in the manner hereinbefore mentioned. * *

''That the defendant has without cause or provocation on the part of the plaintiff repeatedly and at different times which the plaintiff cannot now mention, called the plaintiff vile and opprobrious names and threatened to do him bodily harm and threatened to kill him, and has struck the plaintiff, all without cause

and for the purpose of injuring, vexing, harassing and annoying the plaintiff.''

It is also alleged that:

''The plaintiff has been intimidated by the defendant until he is afraid to remain or live with the defendant, or be in her presence for fear of physical injury at her hands, and he has been rendered sick and nervous and has been harassed, humiliated, vexed and annoyed beyond description and measure, and said acts and threats and conduct on the part of the defendant constitute cruel and inhuman treatment of the plaintiff by the defendant and personal indignities toward him, all of which render the plaintiff's life with the defendant unbearable and burdensome.''

The foregoing is the substance of the complaint, to which the defendant filed an answer in which she denied any and all of the material allegations and pleaded an affirmative defense, setting out a list of real and personal property owned by the plaintiff and its probable and rental value. She alleges that for a long time she had been and now is in ill health and unable to perform any work or labor; that all of the property was acquired by the joint efforts and industry of the plaintiff and herself; that at the time of their marriage the plaintiff was twenty years of age and she was an inexperienced child of fourteen years; she charges plaintiff with cruel and inhuman treatment and failure and neglect to provide for her properly, and specifies other grounds which are unnecessary to this opinion. The lower court rendered a decree for the plaintiff, from which the defendant appeals.

Reversed.

For appellant there was a brief over the names of *Mr. Jay Bowerman, Mr. J. M. Long* and *Mr. Fred W. Wilson,* with an oral argument by *Mr. Bowerman.*

For respondent there was a brief and an oral argument by *Mr. William H. Wilson.*

JOHNS, J.—We have carefully read all of the testimony and examined all of the exhibits, including the broken false teeth, torn shirtwaist and the photographs of the defendant. It is true, as counsel says, that there is a large amount of perjured testimony in the record; it is also true that under the allegations of the complaint a very large amount of the testimony is wholly immaterial. Yet there are many undisputed material facts in the record.

At the time of their marriage the plaintiff and the defendant did not have any home or property rights and were wholly dependent upon their own personal efforts and labor, and the testimony is undisputed that for the first twenty years of their married life they lived happily together, were devoted to each other and were saving, economical, thrifty and industrious, as a result of which they perfected and acquired title to a homestead which they cleared and developed and upon which they made valuable improvements. Defendant claims and the testimony shows that during all of that period, in addition to her housework she labored in the fields and assisted in the clearing of the land and the planting of the orchards and performed at least her share of the work in acquiring and improving the homestead, which they later sold for $8,000. With that money as a basis, the plaintiff continued to prosper, became a prominent business man and constructed a beautiful modern residence in the town of Mosier, where they made their home and were living at the time of their domestic troubles.

While living in their new home, the defendant claims that she became rheumatic and that for such reason

it was necessary for her to have a climatic change, and she made different trips to the City of Portland and two trips to the State of California, during most of which time the plaintiff remained at home, looking after his business interests. For want of children, the plaintiff and the defendant undertook to adopt, and thought that they had legally adopted an infant girl, who was reared and educated by them and who at the time of their troubles was about twenty years of age. While not away at school, the girl, Alice, remained at home with the plaintiff during the different times the defendant was in Portland or California.

1, 2. A large amount of evidence was introduced as to the actions and conduct of the defendant while she was away on her trips. All of such trips were made with the apparent consent and approval of the plaintiff, and while the defendant's conduct was not above reproach and is subject to censure, we do not know upon what theory or legal principle her alleged actions while she was away from home would be any evidence of cruel and inhuman treatment of the plaintiff. It appears from the record that during the time the defendant was on her last trips a certain school-teacher lived and resided at the home of the plaintiff with his daughter Alice. Alice testifies that after she returned home the defendant wanted the school-teacher to leave, and while the plaintiff and the defendant may theretofore have had some minor trouble and had ceased to love and respect each other as in their days of youth and poverty, it was then and there that serious trouble first arose between them. They then became suspicious and lost confidence in each other and the defendant then felt that in a large measure the school-teacher had assumed her own place at the family table and fireside; Alice also testifies, and on that particu-

lar point her testimony is uncontroverted, that she was awakened at 2:30 A. M. and arose, going downstairs, where she found the plaintiff and the schoolteacher alone in the kitchen without a light. The testimony is also undisputed that the plaintiff, under an assumed name, received letters through the postoffice at Hood River. Further, the testimony is undisputed that the plaintiff committed an assault upon the defendant in a public place, in the presence of divers individuals, and forcibly and violently removed her shoe from her foot. While it may be true that there is perjured testimony, that the defendant is at fault and her conduct is subject to criticism, we are of the opinion that the plaintiff is not without blame and that he is equally at fault and subject to like criticism. For such reason, under the facts disclosed in the record neither of them is entitled to or should have a divorce. The decree is reversed and neither party shall recover costs in either court.                                      REVERSED.

McBRIDE, C. J., and BEAN and BURNETT, JJ., concur.