Argued June 21, reversed and suit dismissed July 30, rehearing de-
    nied September 20, motion to retax costs denied October 19,
    1921.

# HAWLEY v. HAWLEY.

(199 Pac. 589.)

**Divorce—Prima Facie Prejudicial.**

1. Divorce is *prima facie* prejudicial to the public interest.

**Divorce—Failure of Plaintiff Wife to Establish Charge of Immoral-
ity Does not Show Lack of Probable Cause for Making Charge
so as to Entitle Husband to Divorce.**

2. The mere failure of plaintiff wife to establish her charge of
immorality against the defendant husband does not show that it
was false and made maliciously, and without probable cause, so as
to entitle him to divorce on his cross-complaint, as to which issues
he had the burden of proof under Sections 726, 810, Or. L.

From Clackamas: GEORGE R. BAGLEY, Judge.

This is a suit for divorce by Marjorie Hawley
against Willard Hawley, Jr. The original complaint
was filed November 21, 1919, charging the defendant
with many acts of cruel and inhuman treatment. On
December 30, 1919, defendant filed his answer, con-
taining a denial of all the alleged acts of cruelty, with
a cross-complaint for divorce, alleging the cruel and
inhuman treatment of defendant by plaintiff. On
February 4, 1920, plaintiff filed an amended com-
plaint, containing additional charges of cruelty, in
paragraph 20 of which plaintiff averred that defendant
at divers and sundry times would insist upon having
sexual intercourse with her in an unnatural and crim-
inal manner. On February 24, 1920, and pending the
trial, the defendant filed a supplemental cross-com-
plaint, setting forth said paragraph 20 of plaintiff's
amended complaint as a further cause for divorce.
Said cross-complaint alleged that the charges and ac-
cusations so made by plaintiff in paragraph 20 of her
amended complaint and in her testimony, "were en-

tirely false, and maliciously made by plaintiff with knowledge of their falsity and with intent to degrade defendant in the estimation of the public and persons present at said trial * * ." It also averred that while testifying as a witness in open court in this cause, the plaintiff did falsely and maliciously accuse the defendant of offending against morality and decency. Based on stipulation, the trial judge entered an order that the allegations contained in defendant's supplemental cross-complaint be considered as denied.

The hearing was begun on February 16, 1920, and continued each judicial day thereafter until and including February 27, 1920. Fifty-one witnesses were examined, whose testimony comprised 1,443 pages. Depositions were taken, and many exhibits offered and received in evidence. It was stipulated by and between the parties that certain persons designated by a list of names submitted by counsel for plaintiff, if present, would testify to the good character of plaintiff, and that those designated by a list read by counsel for defendant, if present, would testify to the good character of the defendant.

Based upon the findings of fact and conclusions of law, the court, on March 12, 1920, decreed that defendant was entitled to a divorce and to the custody of Eva Adele Hawley, the only child of plaintiff and defendant. From that decree plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. C. Schuebel, Mr. C. D. Latourette, Mr. D. C. Latourette,* and *Mr. E. C. Latourette,* with an oral argument by *Mr. Wallace McCamant.*

For respondent there was a brief over the names of *Mr. Grant B. Dimmick* and *Messrs. Griffith, Leiter & Allen,* with oral arguments by *Mr. Dimmick* and *Mr. Harrison Allen.*

BROWN, J.—Willard Hawley, Jr., and Marjorie Fraker were married at Trinity Church, in Portland, Oregon, March 11, 1916, in the presence of their immediate families. He was twenty-six and she was less than a month past eighteen years of age. He was the only son of a very wealthy manufacturer of paper. She was the daughter of Mr. and Mrs. H. A. Fraker, who, for some years, had lived at Oregon City. Mr. Fraker was a traveling salesman. Both Mr. and Mrs. Hawley, Sr., were originally opposed to the marriage, but finally acquiesced.

The testimony shows that at the time of her marriage plaintiff was a popular, vivacious girl, of pure character, with a pleasant and sociable disposition; that the young people of her set were among the best in Oregon City and were very fond of her. Defendant was an industrious young man who had inherited the great business ability of both his father and mother. After marriage they were constant companions, and appeared to their friends to be a happy couple. They were not separated for more than two or three weeks at any time during their wedded life. On October 30, 1917, their baby girl, Eva Adele Hawley, was born. For nearly four years they lived together as husband and wife. Notwithstanding their apparent devotion to each other, they had frequent domestic troubles, and on many occasions defendant requested the plaintiff to leave and to give him his freedom. However, after each of these differences, both forgave and promised to forget.

Finally, during the month of November, 1919, a difficulty arose that was not condoned, and a few days thereafter plaintiff filed a complaint for divorce. Defendant denied and countercharged. There was crimination and recrimination by the parties. Each forgot the vow to love and cherish. Each forgot the value of a good name. Duty to the infant daughter was disregarded. A mutual contest of defamation followed.

At the conclusion of the trial, the court held that the plaintiff had condoned the acts complained of, and that she had failed to establish such charges by a preponderance of the evidence. Moreover, because of plaintiff's failure to establish one particular charge against defendant, the defendant was granted a divorce and the custody of the child, and Marjorie Hawley, at the age of twenty-two, was, by decree of the trial court, divested of all interest in the property of Willard Hawley, turned out into the world penniless, and deprived of the comfort of the little child that she went down into the "valley of the shadow of death" to mother. Is that decree equitable?

1. The contract of marriage entered into between Willard Hawley and Marjorie Hawley cannot be canceled at the will of either or both of them. The sovereign State of Oregon has an interest in that contract. It is the policy of the state not to destroy, but to preserve, the status of marriage. The commonwealth of the State of Oregon regards marriage as right, and divorce as wrong, except for certain designated reasons established in court by clear and satisfactory proof.

In the case of *Westfall* v. *Westfall,* 100 Or. 224 (197 Pac. 271, 276), we approved the following ex-

cerpt from 1 Bishop on Marriage, Divorce and Separation, Section 38:

"Marriage being the source of population, of education, of domestic felicity,—being the all in all without which the state could not exist—it is the very highest public interest. *Prima facie,* therefore, each particular marriage is beneficial to the public; each divorce prejudicial."

Long ago, this court said:

"The policy of the law is to uphold and sustain the marriage relation. The courts of equity will not render their aid to dissolve it unless the proof be clear and satisfactory of the truth of the charge preferred." *Taylor* v. *Taylor,* 11 Or. 303 (8 Pac. 354).

The court again announces the same principle:

"In pursuing this inquiry it is our duty to remember that the contract of marriage, unlike other contracts, the state is specially interested in preserving unbroken, and that the contracting parties cannot annul it, nor the court, except for the causes specified in the statute, and only then on satisfactory evidence that such cause or causes exist. 'Divorces,' said STRONG, J., 'ought never to be decreed without clear and satisfactory evidence of the wrong which the law treats as justifying a cause for a divorce.' " *Wheeler* v. *Wheeler,* 18 Or. 261, 262 (24 Pac. 900).

To like effect are *Jones* v. *Jones,* 59 Or. 308, 311 (117 Pac. 414, 415), and *Taylor* v. *Taylor,* 61 Or. 257, 262 (121 Pac. 964).

In their acts of crimination and recrimination, the parties  hereto have overlooked the principle that a divorce is a remedy for the innocent against the guilty, and not a relief for wrong against wrong.

In *Crim* v. *Crim,* 66 Or. 258 (134 Pac. 13), Mr. Justice MOORE said:

"The plaintiff in a suit for divorce is not entitled to relief unless the evidence shows that she has been free from fault."

Again, this court holds:

"Divorces should not be granted by weighing the evidence and decreeing in favor of the one least guilty, where both have taken an active part in the mutual discord. Equity relieves the injured party, but not the vanquished." *Beckley* v. *Beckley,* 23 Or. 226, 231 (31 Pac. 470).

In *Hengen* v. *Hengen,* 85 Or. 155, 162, 163 (166 Pac. 525), this court, speaking through Mr. Justice BURNETT, said:

"On the principle that one who comes into a court of equity for relief must come with clean hands the following precedents may be read with profit in this connection: *Taylor* v. *Taylor,* 11 Or. 303 (8 Pac. 354); *Adams* v. *Adams,* 12 Or. 176 (6 Pac. 677); *Wheeler* v. *Wheeler,* 18 Or. 261 (24 Pac. 900); *Mendelson* v. *Mendelson,* 37 Or. 163 (61 Pac. 645); *Crim* v. *Crim,* 66 Or. 258 (134 Pac. 13); *Matlock* v. *Matlock,* 72 Or. 330 (143 Pac. 1010). * * It is enough to say that he is proved to be much in fault and that he does not come into chancery with that clear record which alone entitles him to relief."

Also see *Mosier* v. *Mosier,* 89 Or. 477 (174 Pac. 732).

It was the duty of the plaintiff to prove the averments of cruelty alleged in her complaint, by clear and satisfactory evidence, before she would, under any condition, be entitled to a decree of divorce. The trial court, in an opinion of record, referring to the matter contained in paragraph 20 of plaintiff's amended complaint, terms it a serious accusation, and says:

"Every person accused of a crime is presumed to be innocent until the contrary is shown. This pre-

sumption applies in this case. We have, therefore, the testimony of the plaintiff that the defendant attempted to commit a crime (against morality) and the emphatic, positive denial of the defendant. According to plaintiff and defendant equal credit for truth, there is no preponderance in favor of the plaintiff upon the charge named. The defendant's testimony is, however, aided by the presumption suggested, which balances the scale in favor of the defendant.''

The court properly held that the charge contained in paragraph 20 was not established. After a careful study of the entire record, we are convinced that the plaintiff utterly failed in her attempt to prove that defendant committed the offense alluded to in said paragraph 20.

2. It is maintained that the plaintiff's accusation and her failure to establish the same entitled the defendant to a divorce. In this, we cannot agree. The mere failure of plaintiff to prove the truth of her assertion does not establish the allegation of the cross-complaint. In our statement we have referred to the fact that the defendant filed a cross-complaint and sought affirmative relief, based upon the allegations contained in paragraph 20 of plaintiff's amended complaint and on plaintiff's testimony. The defendant must establish that allegation in his cross-complaint by the same degree of proof required of the plaintiff. In other words, before he is entitled to a divorce, he must establish to the satisfaction of the court by a clear preponderance of the evidence that the alleged charge of cruelty was false and made maliciously and without probable cause. It is provided by Section 810 of our Code that:

''The party having the affirmative of the issue shall produce the evidence to prove it * * .''

And it is said in Section 726, Or. L., that:

"Each party shall prove his own affirmative allegations."

It is true, as stated in 10 R. C. L. 897, Section 45:

"Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim by a preponderance of evidence, rests throughout upon the party asserting the affirmative of the issue, and, unless he meets this obligation upon the whole case, he fails."

This rule is cited with approval in *Askay* v. *Maloney,* 92 Or. 566, 574, 575 (179 Pac. 899).

The defendant, in seeking affirmative relief, followed the doctrine announced by this court.

"The defendant may, in an answer in the way of a cross-bill or counterclaim, demand and obtain the affirmative relief of a divorce, when shown to be entitled thereto." *Dodd* v. *Dodd,* 14 Or. 338 (13 Pac. 509).

To like effect, see *Maffett* v. *Thompson,* 33 Or. 547 (52 Pac. 565), and *Merrill* v. *Hexter,* 52 Or. 138 (94 Pac. 972).

The record in this case does not authorize a court of equity to annul the marriage contract existing between the parties hereto. We have viewed all the exhibits and read with much care the entire record. We believe that the public welfare does not require that the testimony heard in this ill-fated suit should be preserved in our reports, hence we have refrained from quoting therefrom.

The decree entered by the lower court should be reversed and the suit dismissed, and it is so ordered.

Plaintiff shall recover her costs and disbursements on appeal, and in the Circuit Court.

REVERSED AND SUIT DISMISSED.   REHEARING DENIED.   MOTION TO RETAX COSTS DENIED.

BURNETT, C. J., and BEAN and JOHNS, JJ., concur.