Submitted on briefs April 8, affirmed May 27, rehearing denied July 22, 1924.

## BURR E. VINSON v. LAURA VINSON.

(226 Pac. 233.)

**Divorce—Testimony Held to Show That Husband was Seeking Divorce Rather Than Merely Interest in Property.**

1. Testimony of husband, suing for divorce, *held* to show that, when divorce was granted him, he was earnestly seeking dissolution of marriage rather than merely an interest in property standing in wife's name.

**Divorce—Divorce and Interest in Property Held Properly Awarded to Husband.**

2. Evidence *held* to warrant decree of divorce for cruel and inhuman treatment, and award of third interest in property to husband.

**Divorce—Falsely Accusing Husband of Adultery, Ground for Divorce.**

3. Willfully and falsely accusing husband of adultery is ground for divorce.

**Divorce—Denied Where Parties are Equally at Fault.**

4. Divorce will not be granted where parties are equally at fault.

**Divorce—Cruel and Inhuman Treatment must be Unjustified and Disproportionate to Wrong Committed by Complaining Party.**

5. Cruel and inhuman treatment must be unjustified by provocation and out of proportion to any wrong committed by complaining party to authorize divorce.

---

3. Charge of adultery, as ground for divorce, see notes in 18 L. R. A. (N. S.) 303; 34 L. R. A. (N. S.) 360.

From Multnomah: WALTER H. EVANS, Judge.

In Banc.

On May 10, 1921, plaintiff filed suit for divorce in the Circuit Court for Multnomah County, Oregon. For cause of suit, he asserted that defendant had treated him in a cruel and inhuman manner, rendering his life burdensome in many respects. He charges that defendant is a fault finder, and that she has grumbled and complained because he is not able to earn more money, notwithstanding he works every day; that the defendant is of a jealous disposition, and wrongfully accuses him of associating with other women, and that she tells the neighbors that he abuses her and treats her cruelly. He also avers that the defendant "says that he is going straight to h—l"; that on different occasions the defendant has applied many opprobrious epithets to him, which he sets forth in his complaint. He says, in one paragraph of his pleading, that—

"The defendant is opposed to all men, and more especially to the plaintiff; * *

"That for the past five or six years the plaintiff and defendant, although living in the same house, have not cohabited, the defendant refusing to associate with the plaintiff."

He avers that for many years, upon receiving his pay check he took it home and turned it over to the defendant, and that he permitted her to spend his earnings as she pleased. He alleges that in May, 1903, he purchased and paid for Lots 1, 2, 6 and 7, Grandview, in the City of Portland, and that at the request of the defendant he placed the title to same in her name.

The defendant, answering, denies each and every allegation of the plaintiff's complaint, except paragraphs 1 and 2 thereof. She avers that she has been a loving and dutiful wife to plaintiff, and that for more than two years last past the plaintiff, without cause or provocation, has deserted her and refused her support. The only affirmative relief she asks is, that she be awarded the sum of $50 per month for support from the plaintiff.

The plaintiff replied. Thereafter, on May 10, 1923, he filed a supplemental complaint, wherein he alleged fraud and deceit upon defendant's part, and which was later amended by charging that the defendant had falsely accused plaintiff of adultery.

At the conclusion of the testimony, the court made findings of fact, conclusions of law and decreed that plaintiff be divorced from the defendant, and that the plaintiff was the owner of an undivided one-third interest in the real estate hereinbefore described.

The defendant appeals to this court.

AFFIRMED.  REHEARING DENIED.

For appellant there was a brief over the name of *Mr. George W. Gearhart.*

For respondent there was a brief over the names of *Mr. E. E. Heckbert* and *Mr. James P. Stapleton.*

BROWN, J.—From a careful perusal of the record, we are convinced that it warrants the court's findings.

The trial court found that the plaintiff and defendant were married at Lewistown, Montana, December 29, 1887; that the defendant has found great fault with plaintiff because of his inability to earn more money, notwithstanding he has worked faithfully. The court found—and the defendant admitted—that

for a great many years plaintiff delivered his pay check to her upon receiving it. The court found that the defendant is jealous and has falsely accused the plaintiff of associating with other women, and has humiliated the plaintiff by telling the neighbors and others that the plaintiff has abused and mistreated her; that she has humiliated him because he would not attend church, and upon many different occasions has applied opprobrious epithets to him. The court further found:

That the defendant "admits that she has accused this plaintiff of associating with other women in a manner improper for a married man. However, the court finds as a fact that she, the said defendant, has failed utterly and completely to submit to the court any satisfactory evidence in support of said allegation."

A further statement of the facts proved would be of benefit to neither party hereto, nor to the public.

1. Plaintiff claims that this suit was brought for the primary purpose of procuring a divorce. Concerning a settlement of property rights that failed the record discloses the following testimony brought out on cross-examination by defendant:

"Q. And why were you to have half the property?

"A. Because it belonged to me. * *

"Q. What was the rest of it (the agreement)?

"A. The agreement was in regard to the division of the property and disposing of the property and dividing the property up between us.

"Q. And what about the divorce?

"A. Well, I applied for the divorce, but on the strength of the agreement that was made there I conceded her the privilege of obtaining the divorce, and waived my complaint on the presumption that that agreement would be carried out fully; never dreamed that she would take advantage of the circumstances and proceed to beat me out of all that

rightfully belonged to me, which she did afterwards, and on the strength of that agreement I withdrew my complaint for divorce, but otherwise I never would have done it.

"Q. Now, do you remember when you testified at the hearing last December before Judge Gatens?

"A. * * Yes, I remember * * .

"Q. Don't you remember that you said there that the thing you wanted was a half interest in that property?

"A. I wanted my interest in the property, but there never has been a time when I didn't want the divorce. I may have made a little remark of that kind, not realizing, perhaps, what I was saying or what it meant. But my meaning wasn't that, at least. I have always insisted on a divorce.

"Q. Well, the property has always been a bone of contention in your family, hasn't it? * *

"A. No, it has been no bone of contention any more than there is lots of times that I wanted to sell the property and use the money in a way that would be beneficial to both of us. She would always refuse me to do that, and it would always cause contention and strife, and them times she would start in and abuse me. * *

"Q. Well, those were the only times that you and your wife ever did have arguments, weren't they, over that property?

"A. Oh, Lord, no! No, indeed! She is awful irritable. I never knew when she would pitch onto me and abuse me scandalously without any provocation.

"Q. It would be something about the property, wouldn't it?

"A. No, not always about the property; any little thing that would come up in the affairs of the home, being working around the house doing her housework, and I didn't do things to suit her she would start in and upbraid me. Lots of times I would have to leave the house, I couldn't stand it any longer to stay in within reach of her tongue."

We must conclude that the testimony in this record shows that at the time this divorce was granted the

plaintiff was earnestly seeking a dissolution of his marriage with defendant.

2. At the time the plaintiff and defendant were married, the plaintiff had acquired title to a homestead. The defendant was a school-teacher and owned a few cattle. They left Montana and moved to Colorado, later going from there to Portland, Oregon. They sold their property, and invested some of the proceeds in the real property described in the complaint; the purchase price was completed from plaintiff's wages.

At the time of the hearing of this divorce proceeding, plaintiff was about 68 years of age and the defendant 55. Their children are all grown and reside away from home.

The record discloses that the testimony was taken in open court, and the trial court, after a painstaking hearing, granted a decree of divorce to the plaintiff and awarded to him a one-third interest in the real property, title to which was in the name of the defendant.

The testimony shows that this couple lived together amicably as long as the plaintiff turned over to the defendant his pay check. When he decided that he would pay the bills himself and refused to deliver his wage check to her, trouble commenced. There is evidence in the record that tends to corroborate the plaintiff's testimony. While the defendant was on the witness-stand, the trial judge talked to her for an hour, earnestly striving to reach a settlement of their differences. We have no doubt that the court correctly decreed the plaintiff a divorce and awarded him an interest in the property that his own money had purchased.

3. In this jurisdiction, it is settled law that when a wife willfully and falsely accuses her husband of such

familiarity with other women as constitutes adultery, such accusation is ground for divorce: *Smith* v. *Smith,* 8 Or. 100; *McMahan* v. *McMahan,* 9 Or. 525; *Eggerth* v. *Eggerth,* 15 Or. 626 (16 Pac. 650); *Herberger* v. *Herberger,* 16 Or. 327 (14 Pac. 70); *Hawley* v. *Hawley,* 101 Or. 649 (199 Pac. 589).

4. A decree of divorce will not be granted where the parties are equally at fault: *Button* v. *Button,* 95 Or. 578 (188 Pac. 180); *White* v. *White,* 100 Or. 387 (190 Pac. 969, 197 Pac. 1080).

5. Before the court can decree a divorce on the ground of cruel and inhuman treatment by the defendant against the plaintiff, it must appear that such treatment was unjustified by provocation, and was out of proportion to any wrong committed by the complaining party: *Taylor* v. *Taylor,* 11 Or. 303 (8 Pac. 354); *O'Brien* v. *O'Brien,* 36 Or. 92 (57 Pac. 374, 58 Pac. 892); *White* v. *White, supra.*

The cruelty complained of was out of proportion to any provocation given the defendant by plaintiff.

The writer regrets to join in the affirmance of a decree that takes from the defendant real property, the title of which stands in her name, for the reason that she is growing old and needs the property. Upon the other hand, the plaintiff is an old man, almost blind, and he, too, needs his property. Be that as it may, we are confronted with a question of law, and law, not sympathy, must govern our actions.

Under the facts disclosed by the record, the plaintiff is, by the provisions of our Code, entitled to the divorce granted by the court below.

The decree is affirmed. Neither party shall recover costs in this court.

                    Affirmed.  Rehearing Denied.