Argued January 13, reversed January 31, rehearing denied, March 6, 1928.

# CARRIE B. BILLION v. VERNON A. BILLION.

### (263 Pac. 397.)

**Divorce—Divorces are Granted Solely upon Statutory Grounds.**

1. Divorces are granted solely upon statutory grounds, and parties are not entitled to divorce merely because they have grown tired of each other.

**Equity—Doctrine of Clean Hands Applies to Suit for Divorce.**

2. Doctrine that he who comes into equity must come with clean hands is applicable to divorce cases as well as other cases.

**Divorce—That Husband and Wife Do not Live Together During Pendency of Litigation Does not Warrant Granting Divorce to Husband for Wife's Desertion.**

3. That parties did not live together as husband and wife during pendency of litigation is insufficient ground for divorce to husband on account of wife's desertion.

**Divorce—Where Both Husband and Wife are at Fault, Neither is Entitled to Divorce for Cruel Treatment.**

4. While cruel and inhuman treatment warranting divorce may exist without necessity of showing infliction of serious bodily injury, court will deny divorce to both spouses where both parties are in the wrong.

**Divorce—Neither Husband nor Wife was Entitled to Divorce for Cruel Treatment Under Evidence Showing Husband's Alleged Coldness and Ill Treatment were Due to Wife's Indifference and Lack of Affection.**

5. Under evidence that husband's alleged coldness, neglect and ill treatment were largely due to wife's indifferent attitude and lack of affection, and that both parties were to blame for inability to live together happily, neither was entitled to divorce for other's cruel treatment.

Divorce, 19 C. J., p. 36, n. 63, p. 93, n. 78, p. 131, n. 97, p. 142, n. 52, p. 144, n. 60, p. 197, n. 69, p. 199, n. 83.

From Multnomah: JOHN H. STEVENSON, Judge.

1. See 9 R. C. L. 269.
3. Separation pending divorce suit, see notes in 119 Am. St. Rep. 639; 138 Am. St. Rep. 149. See, also, 9 R. C. L. 360.
4. Necessity of personal violence to constitute cruelty, see note in 9 Ann. Cas. 1090. See, also, 9 R. C. L. 340.
5. See 9 R. C. L. 387.

Department 1.

This appeal is from a decree granting a divorce to plaintiff. The complaint was filed on the twenty-first day of January, 1924. It is the second suit between the parties. The former suit was terminated by decree dismissing both the complaint of plaintiff and cross-complaint of defendant on December 31, 1923, just twenty-one days before the complaint in the instant case was filed. Plaintiff appealed from the decree dismissing her complaint in the former suit while the instant suit was pending in the Circuit Court. Her appeal was dismissed by this court because, pending the appeal, she was granted a divorce in the instant case by the Circuit Court: *Billion* v. *Billion,* 122 Or. 68 (256 Pac. 389).

In the instant case plaintiff bases her ground for divorce on cruel and inhuman treatment. Defendant counterclaims and prays for a divorce on the same ground and on the ground of desertion. Plaintiff is approximately fifty-four years of age and defendant is approximately seventy years of age. Their marriage to each other is the second marriage for both of them. Their union has been blessed with three children; Lyman, a son, about eighteen years of age at this time, and two daughters, Mary Belle and Elizabeth Adell, aged respectively about seventeen and thirteen years. Both parties own real property separately.                    REVERSED. REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. J. H. Kelley.*

For respondent there was a brief and oral argument by *Mr. Henry S. Westbrook.*

COSHOW, J.—This suit presents a striking illustration of how husband and wife should not conduct themselves. A careful reading and consideration of plaintiff's evidence fails to disclose sufficient grounds of cruel and inhuman treatment exercised by defendant towards the plaintiff to authorize granting her a divorce. Plaintiff's own testimony reveals that she is far from being innocent in the disagreements between the two. After the first trial plaintiff and the three children continued to occupy the home occupied by the parties for many years and defendant was permitted to occupy one of the rooms in that dwelling. After the decree was rendered in the first suit, to wit, on December 31, 1923, the allowance to plaintiff, theretofore made by the Circuit Court, ceased. Thereafter defendant went to the kitchen where plaintiff was preparing breakfast for herself and three children and tendered a check to plaintiff. This is plaintiff's account, in part, of that incident:

"Q. (On cross-examination.) You hit him another time? A. Yes, when he came in and interrupted me when I was getting breakfast, right after the other trial, offered me a check and insisted on me taking it, I hit him a crack on the sleeve, on his hand,—not on his hand, but on his sleeve, with the pancake turner."

Lyman Billion, the son of plaintiff and defendant, testified about the same incident as follows:

"Q. Will you tell the judge what happened? A. It was just after the other trial, and father came into the room and started to hand mother a check or something, and she took the pancake turner and slapped him on the hand."

Mary Belle Billion, a daughter, testified regarding the same incident as follows:

"Q. Tell the judge what you remember about that. A. He came in the kitchen, and one time he said that he would make her head swim, that he could sit right down at that table and she would have to provide for him. And another time he came in and tried to hand her a check, and she took the pancake turner and hit him on the hand."

The same witness also testified that her mother, the plaintiff, said in her presence that her father, the defendant, was "a fool and a tramp." Lyman, the son, also testified that his mother said that his father was "a liar and a bum." He also testified that she told him she could not believe what he said.

There was testimony offered by plaintiff connecting the defendant with relations with other women. The episodes testified about were to the effect that plaintiff had been seen once in a public market and twice on the streets of the City of Portland, once on Third Street and once on Morrison and Broadway, talking to some lady other than plaintiff or his daughters. At another time he was seen to hold the hand of another lady and kiss her as they were parting. This latter incident occurred in front of plaintiff's own residence. The lady kissed was a family friend, a lady much younger than defendant, one who had been brought up with his own daughters, spent a great deal of time in his home and had been a favorite of defendant. He kissed her good-by as she was leaving for her home in Seattle. This occurred in the presence of her husband and daughter and one or two other parties. So far as the evidence itself discloses, there was no impropriety in any of defendant's conduct with the ladies. Unless one's mind was distorted, the conduct testified to by plaintiff would not even raise a suspicion of any improper relation between the defendant and the ladies mentioned.

There are one or two incidents which reflect upon the defendant's conduct towards the plaintiff, but even they are trivial. We have not been able to find, in all of plaintiff's testimony, a serious act or any conduct on the part of defendant sufficient to constitute legal cruelty.

Plaintiff made a great deal out of the fact that she was without fuel during the winter and charged the defendant with having countermanded an order she had given for briquets. Defendant denied having countermanded any order lodged with any merchant by the plaintiff. He did tell the merchant from whom plaintiff was purchasing the coal that the court had ordered him to pay a certain amount monthly to plaintiff and for that reason he would not be responsible for any account that she might contract with his firm. Defendant produced the manager of the firm who testified that plaintiff's credit was always good with the firm and there was no time that she could not have had all the fuel she desired on her own credit.

We are persuaded that plaintiff is magnifying unpleasant relations between herself and defendant and that she herself is largely to blame for the unpleasantness. Plaintiff testified that she had no love for the defendant; that it was impossible for them to live together; that she would not live with the defendant, and did not expect him to show her any affection. She also testified of coldness and neglect on the part of defendant, as though she were offended by his negligence and want of attention to her. We cannot reconcile her testimony with good faith and verity. The presiding judge propounded questions to which she answered as follows:

"Q. Now aside from these instances alleged in the complaint, name one reason that you can't live with him,—what is the reason, what is the real reason? A. Well, his ill-treatment of me all along the years. He did not provide for the family, he never remained at home nights, he was out until 3 o'clock in the morning without giving any account of himself. He ill-treated our children. He has ill-treated our boy from the time that he was a baby.

"Q. You think it is impossible to live with him? A. Yes, it is impossible to live with him. He has never provided a home for me; he has not taken me a place in a great many years, but one, and that was on a free ticket he got from Meier & Frank's. He has for years continually run away from home. It is not possible for me to live with Mr. Billion any longer."

It must be remembered that only a short time prior to this, after a complete hearing of the differences between plaintiff and defendant, the Circuit Court had dismissed plaintiff's complaint. The charges she makes against defendant in answer to the court's questions had been heard and determined against her. If, in the light of those circumstances, plaintiff can secure a divorce by simply making such assertions and that she will not live with him, the laws as heretofore announced by this court will be repudiated.

1, 2. Parties are not entitled to divorce because they have grown tired of each other. Divorces are granted in this state solely upon statutory grounds: *Wheeler* v. *Wheeler,* 18 Or. 261 (24 Pac. 900); *Jones* v. *Jones,* 59 Or. 308 (117 Pac. 414); *Leefield* v. *Leefield,* 85 Or. 287 (166 Pac. 953); *Cain* v. *Cain,* 111 Or. 272 (226 Pac. 230).

We are of the opinion that plaintiff does not come into a court of equity with clean hands. There is some testimony in the record indicating a disposition on the part of defendant to forgive and to become recon-

ciled. Plaintiff exhibits the opposite disposition. Giving to her testimony its full value, she does not make sufficient case to entitle her to a divorce. The doctrine that he who comes into equity must come with clean hands is applicable to divorce cases as well as other cases: *Carmichael* v. *Carmichael,* 106 Or. 198 (211 Pac. 916); *Heinemann* v. *Heinemann,* 118 Or. 178 (245 Pac. 1082).

3. We believe that defendant has not been free from blame. He could have done more than he has attempted to do to effect a reconciliation. He has not shown proper consideration for plaintiff's feelings and does not show the cruelty which the law demands entitled him to a divorce for cruelty or personal indignities. We do not think the showing is sufficient to grant defendant a divorce on the ground of desertion. During the pendency of the litigation between the parties they could not well live together as husband and wife.

4, 5. It is not the intention to hold that it was necessary for either of the parties litigant to inflict serious bodily harm on the other in order to constitute cruel or inhuman treatment: *Perkins* v. *Perkins,* 72 Or. 302 (143 Pac. 995); *Steele* v. *Steele,* 96 Or. 630 (190 Pac. 716); *Kaadt* v. *Kaadt,* 110 Or. 573 (223 Pac. 934). But the evidence must preponderate decisively in favor of one or the other: *Hill* v. *Hill,* 24 Or. 416 (33 Pac. 809); *Crim* v. *Crim,* 66 Or. 258 (134 Pac. 13); *Hawley* v. *Hawley,* 101 Or. 649, 653 (199 Pac. 589); *Vinson* v. *Vinson,* 111 Or. 634, 640 (226 Pac. 233). Where both parties are in the wrong the court will not sift the evidence for the purpose of determining which is more wrong than the other, but will deny a divorce to either. This does not mean that where one is very slightly at fault and the other

unreasonably so that a divorce will be denied the less guilty person. The court recognizes that no human is perfect. "To err is human; to forgive is divine." In the instant case, consideration of the testimony convinces us that both parties are equally to blame for the miserable condition in which they are now living. We cannot grant a divorce to either without doing violence to the law of the state and the former decisions of this court.

It is an unfortunate case. The evidence shows that plaintiff has mortgaged her property at Gearhart to the amount of $1,125 largely for the purpose of conducting this litigation, either in this or the former case. The record also discloses that the defendant, in addition to being required to put up a large sum of money in the aggregate for the support of plaintiff and their children, has also been compelled to advance a large sum of money to pay plaintiff's attorneys and court expenses. The taking of testimony in the instant case has incurred an unnecessary amount of expense to the parties. Defendant, at the beginning of the case, conceded that plaintiff was a competent person to have the custody of the children and that plaintiff was and had been a good mother. This concession was made in open court, so that there could be no controversy about it. Notwithstanding that concession plaintiff took a large amount of testimony for the purpose of proving that plaintiff was competent and worthy to have the care and custody of these children. We cannot approve such wanton extravagance in the trial of divorce cases.

The decree of the Circuit Court is reversed and one will be entered here dismissing both the complaint of the plaintiff and the cross-complaint and counter-

claims of defendant with prejudice. Neither party
will recover costs or disbursements in this court.

REVERSED AND DECREE ENTERED.  REHEARING DENIED.

RAND, C. J., and McBRIDE and BROWN, J.J., concur.