Argued April 1; affirmed April 22, 1930

## JOSEPHSON *v.* JOSEPHSON
(287 P. 80)

*Marvin K. Holland* of Portland (Robert W. Shepherd on the brief) for appellant.

*Guy L. Wallace* of Portland for respondent.

BROWN, J. The plaintiff's mother and father were separated when the plaintiff was but five years old. Both have since remarried. According to the representations of the mother, plaintiff was but sixteen years old

when she was married. There is testimony, however, indicating that she was under sixteen. At the time of their marriage the defendant was nineteen years old. The plaintiff styles him as "a big, rawboned prize fighter and longshoreman." Before the marriage the defendant boarded at the home of plaintiff. For a short time after their marriage they seem to have gotten along happily. Plaintiff asserts that two months after they were married the defendant began to neglect her and spend his time at the longshoremen's hall, and that about that time they moved to a room heated only by a stove; that, in February, 1927, plaintiff, then being pregnant, was grossly neglected by the defendant, in that he failed to furnish her comfortable living quarters, and when she complained that he told her she could "get out if she didn't like it." She contends that defendant would often stay out at night, and that he failed to give her money with which to comfort herself, or with which to procure clothing for the expected child, and, further, that he nagged, annoyed and insulted plaintiff, and swore at her and called her vile names. She says that upon his return home late one night a pair of ladies' silk hose was found in his car. She testified that defendant never assisted her in caring for the baby, and she swore that he made unnatural sexual demands upon her too abominable to spread upon the records of this court. He stoutly denied this charge. He likewise denied all other charges made by plaintiff, and testified that he had worked regularly from the time when he was 11 years old. In this he is strongly corroborated, with proof that his life has been one of honest toil. Concerning the little child of plaintiff and defendant, he testified:

"Q. Do you love your baby? A. You bet I do, and he loves me a lot, too.

"Q. What happened here in the court room yesterday when you wanted to hold your baby? A. I think Mrs. Nichols was holding it, and the baby wanted to come to me, and Mr. Smith walked over and knocked my hands down.

"Q. What did he say? A. He said, 'Get out; take the baby outside,' he said to Mrs. Nichols.

"Q. Have you tried to hold the baby in the court room here? A. They won't let me. Mr. Smith and all of them take the baby out when I get near the baby.

"Q. Has the baby called to you in the court room here? A. Yes, he did all day, and yesterday, too; he wants to come to me.

"Q. What did he say? A. 'Daddy, Daddy.' He wants 'Daddy.' And they took him out.''

Mrs. Vora Sowers, an operative in the women's protective division of the Portland police department, testified that she became acquainted with the plaintiff in the performance of her official duties, and, with respect to that acquaintance, she stated:

"Q. You went on down to Nichols' and talked to her (plaintiff) there? A. Yes.
&ast;  &ast;  &ast;  &ast;

"Q. In your conversation with Mrs. Josephson here, what was said with regard to her married life?
&ast; &ast; &ast; A. She told me they were happy together, but that she had wanted to leave the child to board with Mrs. Nichols and Ernestine and go to work. &ast; &ast; &ast;.

"Q. Did she say anything as to how he supported her? A. She told me that he supported her.

"Q. And as to whether or not he was good to her? A. Yes, she said he was good to her and that they were happy together; she felt they could continue to be happy together except for outside advice.
&ast;  &ast;  &ast;  &ast;  &ast;

"Q. Did she make any statements to you about being mistreated or anything by him? A. No, she didn't.

"Q. Just the reverse of that? A. Just the reverse of that.''

From a thorough study of the testimony, the writer concludes that, as appears from the statement made by plaintiff to the witness from the women's protective division of the Portland police department, the family difficulties of the parties hereto were the result of outside influence. The record strongly indicates that the defendant is a hardworking, industrious young man, and that during his married life he has worked constantly, excepting only the period of time when he was recovering from a fracture of the skull sustained while working as a longshoreman. The plaintiff has utterly failed to establish the allegations of the complaint by that degree of proof necessary to enable this court to say that the evidence preponderates in her favor. If ill temper on the part of the defendant has been shown, it has also been shown that it generally arose out of the fact that after performing a hard day's work he returned to the home to find that his wife was either gone or wishing to leave without preparing the evening meal. In view of this fact, we note the case of *White v. White,* 100 Or. 387 (190 P. 969, 197 P. 1080), where this court announced the following doctrine:

"A decree of divorce should not be granted when the parties have mutually contributed to the conditions complained of (local citation)."

Another interesting case bearing upon this subject is the case of *Thomsen v. Thomsen,* 128 Or. 622 (275 P. 673), where it is written:

"In *Carmichael v. Carmichael,* 106 Or. 198 (211 P. 916), this court said: 'The doctrine of recrimination is an application of the wholesome maxim in equity that he who comes into equity must come with clean hands.' And in *Hawley v. Hawley,* 101 Or. 649 (199 P. 589), we said: 'Divorce is a remedy for the innocent against the guilty, and not a relief for wrong against wrong.'"

See, also, *Hill v. Hill,* 124 Or. 364 (264 P. 447), and *Billion v. Billion,* 124 Or. 415 (263 P. 397).

After a fair consideration of the testimony of record and of the law applicable thereto, we believe that the lower court, who heard the cause and saw the witnesses, rightly denied a divorce to either party hereto. The decree is therefore affirmed.

Neither party will be allowed costs in this court.

McBRIDE, J., did not participate in the hearing or decision of this case.