[Filed April 13, 1885.]

### MARY C. ADAMS *v.* JESSE ADAMS.

#### AND

### JESSE ADAMS *v.* MARY C. ADAMS.

DIVORCE.— A divorce will not be granted when it is apparent that the petitioner's principal object in seeking one is to secure certain property rights.

JOSEPHINE COUNTY. Appeal by Jesse Adams. Bills dismissed.

*B. F. Dowell,* and *P. L. Willis,* for Appellant.

*J. R. Neil,* for Respondent.

THAYER, J. — This is an appeal from a decree of the Circuit Court for the county of Josephine. The respondent Mary Adams commenced a suit in that court against the appellant Jesse Adams, to obtain a divorce, and the appellant Jesse Adams commenced a suit in the same court against the said respondent, for the same purpose. At the October term, 1884, of the said court, the two suits were consolidated, and upon the hearing the

Circuit Court granted a divorce in favor of the said Mary Adams, and dismissed the suit of said Jesse Adams, whereupon the decree appealed from was entered. The parties were married on the 13th day of October, 1875, and lived together, I judge from the proofs and allegations in the two suits, about eight years, when they engaged in a general row and separated. They were middle-aged persons when they married, and each had the remnant of a family. The appellant had a daughter, and the respondent had two sons and two daughters by former marriages. They all tried to live in the same house. The respondent's two sons were grown, and one of her daughters had been, as would appear from the evidence, a prostitute. The appellant had some property at the time of their marriage, which he claims to have put in his wife's name, excepting certain personal property that he insisted upon holding, although the parties are having a spirited contention as to which shall have it.

The grounds upon which each of the parties claimed a divorce were, cruel and inhuman treatment and personal indignities rendering their life burdensome. The respondent alleges in her complaint that ever since March, 1881, until the commencement of her suit, the appellant had habitually conducted himself towards her in a quarrelsome, ill-tempered, and abusive manner, using harsh and insulting language towards her; and during the said time, he treated her children in such an abusive and threatening manner that it became impossible for them to remain at home to live; prohibited her from attending church, although she desired to do so. That about March, 1882, the appellant in a violent and threatening manner drew a shovel, and attempted to strike her with it; and in September of that year assaulted and struck her violently on the arm with some weapon he had in his hand, and then took her team of horses and left and deserted her. That in April, 1883, the appellant circulated false and slanderous reports about her, charging her with having sworn to a falsehood, and with having in her house a woman of ill-repute.

The appellant in his complaint alleges that soon after their marriage the respondent commenced a series of cruel and

inhuman treatment; also, "infernal indignities," rendering life
burdensome to himself and his daughter. He sets out, in sepa-
rate paragraphs of the complaint, a list of the wrongs he has
received from the respondent since their marriage; in the second
one, a number of instances in which the respondent had applied
opprobrious terms to the daughter; in the third, an account of a
scene the parties had in attempting to rescue the respondent's
daughter referred to from a life of prostitution and shame; and
of an agreement they made, after their efforts had failed, to the
effect that said daughter should never be allowed to enter their
house again; and of the violation of the agreement by the
respondent, alleging therein that in August, 1882, said daughter
came to their house, and remained there in spite of the protest
of the appellant until after he separated from his wife; that the
name of the daughter had been Emma Potter; that when she
came to their house at the time last referred to, it had become
Emma Cowles; and that the respondent insisted upon her
remaining in their family with the respondent's other daughter,
and the daughter of the appellant. In the fourth paragraph,
the appellant gives an account of the row which resulted in their
separation. From his version of it, I would conclude that it
was a fight in which the respondent and her children were
arrayed against the appellant, and is the same affair in which
the respondent alleges that he struck her on the arm with some
weapon. The appellant, however, alleges that she received the
blow from one of the other combatants while attempting to hit
the appellant with a frying-pan. The appellant further alleges
in said paragraph of the complaint that, after the affray was
over, the respondent ordered him off the premises, and said she
never intended to live with him again. In the fifth paragraph
of the complaint, the appellant alleges that the respondent had
him arrested for an assault and battery, before a justice of the
peace; and that said justice, instead of trying him for the assault
and battery, bound him over to keep the peace. In the sixth
paragraph, the appellant alleges that on the 27th day of October,
1882, the respondent made oath before a justice of the peace that
he had been guilty of the crime of larceny, and procured his

arrest on that charge; but that the justice discharged him. This affair seems to have arisen out of a controversy over the team before referred to. The other paragraphs in the complaint, viz., 7, 8, 9, 10, and 11, relate to their property affairs and the controversy over the said team. The respondent had undertaken to recover the possession of it in an action for that purpose, and had recovered judgment in the lower court for such possession, but the appellant had taken an appeal therefrom. The Circuit Court, upon motion of the respondent's counsel, struck out of said complaint the third, fourth, fifth, sixth, ninth, and tenth paragraphs thereof. Answers were filed to these two several complaints, except to the portion of the appellant's which the court struck out as before mentioned, and proofs were taken in the respondent's case, and the appellant took some depositions; but nearly if not all of them were taken after the expiration of the three months provided in the Civil Code in which to take such proof, and were stricken out on motion of the respondent's counsel.

The only questions the appellants can submit to in this court are: *First*, the rulings of the Circuit Court in striking out of his complaint the said paragraphs referred to; and *second*, the granting the decree of divorce in favor of the respondent. There was, also, something said upon the argument about the court having stricken out a part of the appellant's answer to the respondent's complaint, which, as I understand, is the same matter that was stricken out of the appellant's complaint; but I do not see how it could have been interposed as a defense to the respondent's suit, except so far as it controverted the allegations in her complaint, and he could have had all the benefit of it under a denial for that purpose. So far as the two suits are concerned, I regard them both as entirely destitute of merits. The parties intermarried evidently without any just or proper appreciation of the relations they thereby formed; and if they intended in the outset to conduct themselves towards each other as a husband and wife should, the two sets of children furnished such an element of discord that it would probably have prevented them from observing their mutual promises for any considerable period

of time.  I am of the opinion that the appellant has been much
more wronged in the affair than the respondent.  He appears to
have had some property at the time of the marriage, which the
respondent has succeeded in getting the title to in her own name,
and now evinces a determination to expel him.  Besides, she has
kept her own children about her, two of whom were grown men,
and who should have been made to depend upon their own
resources for a support, and the older daughter had no claim
upon the mother, even, much less upon the appellant.  These
circumstances may not be sufficient to establish a claim for a
divorce, but they necessarily were annoying, and, doubtless,
occasioned the abuse and ill-temper of which she complains.

The respondent had no ground for a divorce; the appel-
lant's treatment of her children was no cause of complaint.  He
should have driven away the three referred to unceremoniously;
they had no business to foist themselves upon him.  Two great,
and probably worthless boys, hanging about his place for him
to support would provoke anyone; and the girl, Emma Potter
Cowles, had long since forfeited all claim to respect or hospital-
ity.  There is certainly no ground in that part of the complaint
for a divorce.  The next allegation, that he prohibited her
from attending church, is more serious; but it does not seem to
be supported by the testimony.  The respondent in her evi-
dence barely alludes to it; says "he opposed my going to
church."  This amounts to nothing, without further explana-
tion.  The drawing the shovel, and attempting to strike her
with it, may or may not have been cruel and inhuman treat-
ment.  That would depend very much upon the circumstances,
the *animus* of the appellant, and the degree of sensitiveness of
the respondent.  It was not commendable conduct, yet it was
not necessarily a sufficient cause for a divorce.  The alleged
striking of the respondent upon the arm occurred in the general
*melee* referred to.  The appellant claims that the son hit her
with the frying-pan a blow aimed at his head, but whether that
is so or not, it happened when quite a desperate fight was going
on, in which the appellant seems to have been largely in the
minority.  The charge that the appellant deserted her is dis-

proved by the evidence of the deputy sheriff, Chapman. It is quite certain that instead of his deserting her, he was himself driven away from the house. He had made a manful fight against his step-children, but was induced to retire when Chapman requested him to. It doubtless would have been a disgraceful affair if it had occurred between people of culture, but I am not able to see that appellant was to blame. I think his chastisement of the two boys was commendable; that it was no more than a faithful discharge of his duty as a step-father.

It does not seem to me that the respondent has shown by her allegations and proofs that she was entitled to a divorce. Her case has more the appearance of a general scheme to plunder the appellant and clear him out by a proceeding in court that would afford a color of respectability. Nor, upon the other hand, do I think the appellant is entitled to a divorce. It is very apparent that his desire to obtain one is merely to secure certain property rights. He would be able thereby, perhaps, to settle the contention about the team of horses, and secure a third interest in the land he caused to be conveyed to the respondent; but courts should not entertain jurisdiction in such cases for any such purpose. If he has been so imprudent as to allow the title to real property owned by him to be conveyed to the respondent, he has no right to undertake to get it back in that way. The public has an interest in divorce suits, and the court should administer their jurisdiction of that subject in view of the public good as well as of private rights.

The decree appealed from herein divorced the appellant as effectually as though it had been in his favor. He can therefore have no other object in obtaining such a decree in his favor than to secure the property interest referred to. His proceeding is a fraud upon the law. His attempting to have it enforced in his behalf is not to obtain the principal benefit it affords in such cases, but that he may receive the incident attending it. This would be a prostitution of a jurisdiction conferred upon the courts of the State for humane and public purposes, and which cannot properly be invoked for any other. As to the personal property, his right can be settled in an ordinary proceeding at

law.    He does not need to sue for a divorce on account of that; and if he has placed the title of the land beyond his reach, he must suffer the consequences.    But aside from that, I do not think, in view of all the facts which have been developed, that he is entitled to a divorce.    He and the respondent have for a long time been living a kind of cat and dog life; been quarreling, criminating, and recriminating, until finally they have both resorted to the courts to enforce a separation.    They neither present the kind of case that a court, in the administration of ecclesiastical law, should take cognizance of.    A police court is by far a more suitable tribunal to adjust their grievances.    I think, as before suggested, that the appellant is shown to be less in fault; but they are both too much in the wrong to claim the remedy demanded.    Nor do I think they have, either, in their allegations and proofs, in view of their condition in life, and the mode in which they have been living, shown such a kind of treatment as the law denominates " cruel and inhuman."    Doubtless they have abused each other very much ; but it has been rather mutual — very nearly a stand-off; so much so that a decree dissolving the marriage upon any of the grounds alleged in their respective complaints would not be consistent with the spirit of the law upon that subject.    I am of the opinion that both of their complaints should be dismissed. This conclusion renders it unnecessary to pass upon the questions of law raised by the striking out of the parts of the apellant's complaint, or any of t'    other rulings of the Circuit Court.

LORD, J., concurred.