Argued February 14; modified February 27, 1940

## DOUGLAS *v.* DOUGLAS

(99 P. (2d) 479)

In Banc.

*Morris A. Goldstein*, of Portland (Goldstein & Galton and Charles H. Coston, all of Portland, on the brief), for appellant.

*Frank H. Hilton*, of Portland, for respondent.

KELLY, J.  During the latter part of the year 1935, defendant came by bus with her son, then about six years old, to Portland.  From Albany to Portland de-

fendant shared a seat on the bus with Mrs. Maronay. When they arrived in Portland, Mrs. Maronay invited defendant to come, with her son, to the house of Mrs. Maronay and her mother. While there defendant met the plaintiff who was, and is, a friend of Mr. and Mrs. Maronay.

From the home of Mrs. Maronay and her mother, defendant and her son went to Lebanon where she remained one night and then they went to thë home of plaintiff who was then a widower. After remaining at plaintiff's home for four or five weeks, defendant and her son returned to their home in Binghamton, New York, arriving there December 15, 1935. While defendant and her son were in New York, plaintiff visited them.

On March 4, 1937, defendant, with her son left their New York home and came west, via the Panama Canal, stopped at Reno, Nevada, long enough for defendant to secure a divorce from the father of her son. Then defendant came to Portland, Oregon, arriving on the 7th day of August, 1937, and going at once to the home of plaintiff.

Defendant and her son lived at the residence of plaintiff until the 7th day of May, 1938, at which time plaintiff and defendant accompanied by defendant's son went to Vancouver, Washington, and were married.

The record plainly discloses that for a time defendant had a woman, as well as her son, with her at plaintiff's house; part of the time, defendant's brother was there; and, part of the time, defendant's nephew stayed there.

There are three controlling questions in this record. The first is whether the plaintiff established his cause for divorce. The trial court held that he did not. The

second is whether defendant proved her cause for divorce. The trial court held that she did. The third question is whether plaintiff proved his charge of fraud on the part of his wife, which alleged fraud he claims induced him to execute the deed in suit. By that deed plaintiff transferred his home property in Portland to his wife in fee.

The testimony is conflicting; but it is clear to us that, until the marriage was consummated by them, the plaintiff and defendant were cordial and agreeable to each other.

Some two weeks after the marriage, a man called at their home and asked for plaintiff. Upon being informed by defendant that plaintiff was not there, this man left without making his mission known. This man, a few days later, again came to the house where plaintiff and defendant were living, but failed to see any one there. A few days thereafter this man again called, and on that call told defendant that his wife had corresponded with plaintiff; that he had seen letters to her written by plaintiff and that he wanted to ascertain what plaintiff intended to do about it.

Defendant testified that this man told her that if plaintiff took this man's wife, he would have to pay for it. The man, himself, testified that he made three trips to the home of the parties because of apparent infatuation his wife had for plaintiff herein, but he disclaimed having threatened to exact money from plaintiff.

Defendant testified that she told her husband of the occurrence and when she described the man, her husband gave the name of the man; but defendant disclaimed having repeatedly told plaintiff of the circumstance.

Plaintiff testified that every day and several times a day defendant continued to dwell upon the incident, saying to him that this man would sue him and probably take the property and urging him to convey the property to her.

The only corroboration, if it could be given that effect, of plaintiff's statement that defendant coerced him by misrepresentation to make the deed, is the testimony of Mrs. Maronay that defendant in a conversation told her that one of defendant's age knew that there is no such thing as love and the thing to do was to find some man with property and induce him to transfer that property to her. This testimony is denied by defendant.

The attorney, who prepared the deed in suit, contradicted plaintiff in reference to the alleged statement which plaintiff said was made in the attorney's presence when the deed was prepared to the effect that the deed in suit was to continue in effect only until such time as the threatened suit by the irate husband was impending; and when that matter was settled the property would revert to plaintiff. This attorney had acted as attorney for plaintiff, but until then had never met defendant.

Defendant testified that the money which she used in coming from her home in New York, via the Panama Canal and Reno, belonged to her son; that it had been set aside to be used in giving the boy an education. She also testified that plaintiff induced her to use that money by promising that he would reimburse her.

The plaintiff testified that the only money he agreed to pay her to enable her to come to Portland was $100.00 which he paid in postal money orders.

Both parties testified that plaintiff declined to have anything to do with defendant's divorce proceeding.

We think that the regard plaintiff then had for defendant, the fact that he knew defendant had used her son's money in coming to plaintiff and the further fact that decidedly compromising letters had come to plaintiff from the wife of the man who had called at plaintiff's home, were the inducing causes impelling plaintiff to deed his property to his wife. We think that the record does not disclose that defendant misrepresented any material fact to induce plaintiff to execute the deed in question.

The cruel and inhuman treatment which plaintiff charged on defendant's part consists mainly of his claim of misrepresentation inducing the execution of the deed in question.

■■ The other incidents relied on by plaintiff are controverted or explained; and we concur with the trial court that plaintiff did not establish a cause for divorce.

We cannot concur, however, in the conclusion that defendant established a cause of divorce. To constitute a cause for divorce on the ground of cruelty, the cruelty must be unmerited and unprovoked unless it is unjustified by the provocation and out of proportion to the offense. Subject to that rule, where both parties contribute by misconduct to marital discord, neither is entitled to a divorce. *Taylor v. Taylor*, 11 Or. 303, 8 P. 354; *Adams v. Adams*, 12 Or. 176, 6 P. 677; *Wheeler v. Wheeler*, 18 Or. 261, 24 P. 900; *Beckley v. Beckley*, 23 Or. 226, 31 P. 470; *Mendelson v. Mendelson*, 37 Or. 163, 61 P. 645; *Jones v. Jones*, 44 Or. 586, 77 P. 134; *Crim v. Crim*, 66 Or. 258, 134 P. 13; *Matlock v. Matlock*, 72 Or. 330, 143 P. 1010; *Spady v. Spady*, 79 Or. 421, 155

P. 169; *Hengen v. Hengen*, 85 Or. 155, 166 P. 525; *Crumbley v. Crumbley*, 94 Or. 617, 186 P. 423; *White v. White*, 100 Or. 387, 190 P. 969, 197 P. 1080; *Hawley v. Hawley*, 101 Or. 649, 199 P. 589; *Bruschke v. Bruschke*, 103 Or. 601, 205 P. 973; *Billion v. Billion*, 124 Or. 415, 263 P. 397; *Thomsen v. Thomsen*, 128 Or. 622, 275 P. 673; *Josephson v. Josephson*, 132 Or. 581, 287 P. 80.

On the ground of cruelty, the only corroboration, if it could be so denominated, of defendant's claim that the plaintiff twisted her wrists, kicked her and slapped her came from her nine-year old son and an invalid neighbor, a woman who said that she had seen bruises upon defendant's arms and hands.

The boy could not fix the time within a year that he claimed to have witnessed the assaults by plaintiff upon defendant; and the neighbor, though doubtless a most estimable woman, was unable by reason of her illness to be at all definite as to time.

Each of the parties claims that the other party used profane and abusive language.

By an apparently disinterested witness, a wood dealer, we are told that, when he brought some wood to the home of the parties, defendant, in referring to her husband, said, "The damned big ass hasn't left me any money to pay for the wood." Defendant did not deny that statement. Moreover, defendant admitted that she had called plaintiff a pig.

We could extend this discussion of the record, but no good purpose would be served in doing so.

The decree of the circuit court is affirmed in so far as it dismissed plaintiff's complaint, but it is hereby ordered that the decree of the circuit court be and the same is reversed and set aside in so far as it grants a decree of divorce or alimony to defendant. It is fur-

ther ordered and decreed that defendant's further and separate answer and cross bill be and the same is hereby dismissed. Neither party hereto shall recover costs or disbursements from the other party.

Affirmed in part and reversed in part.

BEAN and ROSSMAN, JJ., not sitting.