Argued December 22, 1943; reversed January 25, 1944

# HOLLINGWORTH *v.* HOLLINGWORTH

(145 P. (2d) 466)

Before Bailey, Chief Justice, and Belt, Rossman, Lusk and Brand, Associate Justices.

*Herbert P. Welch,* of Lakeview, for appellant.

*Henry E. Perkins,* of Klamath Falls, for respondent.

BRAND, J.   The parties were married on October 29th, 1938, and have one child, a daughter, Wilma Lee, the result of the marriage.   The defendant has two children from a former marriage.   Each seeks a divorce on the ground of alleged cruel and inhuman treatment of the other.   Each asserts that the other is an unfit person to have the custody of their child.   Each desires that custody.   We think that each successfully proved that the other was not a fit and proper person to have

the custody of the child, so the decree as rendered cannot stand in any event.

■ ■ The defendant's diary, which was offered in evidence, related to a period of time from January, 1938, to September of the same year. The last entry was about five weeks prior to the marriage of the parties. The offer of the diary in evidence was rejected by the court. Upon the principal issue of the case it was inadmissible, but upon the question of the fitness of the defendant as custodian of the child it was relevant. The diary is a highly spiced document indicative of loose morals and over-indulgence in alcohol. The plaintiff testified to the fact of his own illicit relations prior to his marriage to the defendant, and, as in the case of the diary, the evidence was relevant upon the question of his fitness for the custody of the infant.

■ A review of the evidence convinces us that the decree must be reversed not only as to the matter of the custody but also upon the main issue. Fairness to the parties undoubtedly requires that we examine all of the evidence with scrupulous care. This we have done, but it does not require that we spread the evidence on the permanent records of this court. The bar would gain no professional enlightenment from the sordid details, and the parties may well prefer that we set forth the evidence only in outline.

■ This court has frequently given weight to the findings of fact of the trial judge in cases of this nature, but in this instance the record discloses an unusual situation which requires that we pass upon the evidence unweighted by the findings of the trial court. The findings of fact contain the statement that the court "cannot consider" and "has therefore excluded the testimony of the plaintiff." The reason given for the total

exclusion of the plaintiff's testimony was that when he first testified the plaintiff told of an occasion in Klamath Falls at the Klamath Packing Company when he saw his wife start on a horseback ride with one Frank Lowell. Plaintiff testified that he had been drinking beer but was not drunk. When recalled in rebuttal plaintiff admitted that he had been drunk on that day. He testified that "I got a little tight because—well just because I knew what was going on." He testified:

"Q Was it because you suddenly realized what was going on?
"A Well I realized there was something wrong.

 *  *  *  *  *

"A Well we had been fighting a long time and arguing about who it was and everything; I told her I knew who it was and I told her—well, she blew up right there in the house.
"Q Then what happened?
"A She slapped me and I slapped her. That is all, I guess; and after that I did get drunk."

We do not condone plaintiff's conduct in testifying first that he drank beer but was not drunk and then admitting on rebuttal that he was drunk. We agree that a person wilfully false in one part of his testimony is to be distrusted in others, but the fact remains that the testimony of the plaintiff in general was characterized by frankness even when it was opposed to his own interests, and we think it was entitled to fair consideration by the court, notwithstanding his inconsistent statements concerning the degree of his intoxication on a particular occasion. Long experience with witnesses upon the stand convinces us that the testimony of those who say they have been drinking "but were not drunk" is almost always to be taken with a grain of judicial salt. Plaintiff's inconsistent statements concerning

his own intoxication, while not to be excused, nevertheless do not warrant the entire exclusion of his testimony in the consideration of the merits of the case. Much of the testimony of the plaintiff was strongly corroborated by other witnesses.

The evidence discloses that the defendant left the plaintiff in May, 1941, about two and a half years after the marriage. She indicated to the plaintiff that there was another man in the case, although she did not at that time name him. The plaintiff testified at a later time:

"She told me that night Frank Lowell was going back to his wife and that he said he would give her no more money for this suit,—this lawsuit that was coming up. That is the way I knew there was Frank Lowell; I knew it before but she told me then."

Plaintiff further testified that he saw the defendant and Lowell at the "El Padre" night club in Klamath Falls, on which occasion,

"Frank Lowell said, 'we are going to get that baby, don't think we are not.' He pulled out a big wallet and felt through it; I do not know how much money was in it, but just to show how much money he had, and he slammed it down in front of my face and he said, 'I'll take it to the Supreme Court if necessary to see that she gets the baby'."

Other witnesses testified to occasions on which they had seen the defendant in commpany with Lowell when she appeared intoxicated and was engaged in activities of a definitely non-platonic character. Mr. Lowell did not testify.

■ While there was no evidence that the defendant was ever cruel to the infant child of the parties, there was evidence, not only from the plaintiff, but from

other witnesses concerning her extreme harshness in the treatment of her two children by a former marriage. When in anger it appears that she punished them with a strap and at times with a stick of wood in a manner which certainly must have destroyed the peace and quiet of the home. There is ample evidence that the defendant became intoxicated at banquets, parties, night clubs and on other occasions. We think that the evidence demonstrates that she was entitled neither to a divorce nor to the custody of her minor child.

The remaining question is whether the conduct of the husband has been such as to warrant this court in granting a divorce to him. While it cannot be said that the plaintiff was a habitual drunkard as alleged by the defendant, the evidence conclusively establishes the frequent and excessive use of intoxicating liquor and frequent gross drunkenness. The evidence discloses that he became intoxicated "practically every week * * * until he was incapable of taking care of himself and was helpless." The evidence discloses further that on two occasions he used physical violence on his wife, once in a card game, and he told her more than once that "he had gone to houses of prostitution, he said to get a drink." To the latter charge the plaintiff made an ambiguous answer which, if contained in a pleading, would have amounted to a negative pregnant. His testimony on that matter was not satisfactory.

The defendant was for a considerable period employed as a waitress, and her husband was at times left in charge of the infant child. There is no evidence that he was ever cruel or abusive in his treatment of his child, although he frequently punished the older children of defendant by the former marriage, but he did, while in charge of his own child, become intoxi-

cated, and on at least one occasion became drunk about town while the infant was in his physical possession. After the separation of the parties he for a time refused to let the defendant know where the child was.

We are of the opinion that both the plaintiff and the defendant deviated from the truth in material respects in testifying concerning the charges made against them. We have made allowance for the rough and ready type of life of both of these parties, and we fully recognize that they are not to be judged by the highest standards of social propriety which might be applied under other circumstances and to persons of different experience and background, but upon the entire record it appears that both parties have been gravely at fault and to a kindred degree.

It is firmly established by the decisions of this court that he who comes into equity must come with clean hands, and that this doctrine is applicable to divorce cases. *Carmichael v. Carmichael,* 106 Or. 198, 211 P. 916 (1923). When the conduct of the parties is reprehensible to a kindred degree, the court ought not to interfere at the instance of either. *Matlock v. Matlock,* 72 Or. 330, 143 P. 1010 (1914); *Crim v. Crim,* 66 Or. 258, 134 P. 13 (1913); *White v. White,* 100 Or. 387, 190 P. 969, 197 P. 1080 (1921); *Squires v. Squires,* 115 Or. 655, 239 P. 302 (1925); *Hill v. Hill,* 124 Or. 364, 264 P. 447 (1928); *Billion v. Billion,* 124 Or. 415, 263 P. 397 (1928); *Smith v. Smith,* 146 Or. 600, 31 P. (2d) 168 (1934); *Heisler v. Heisler,* 152 Or. 691, 55 P. (2d) 727 (1936); *Douglas v. Douglas,* 163 Or. 689, 99 P. (2d) 479.

As said in *Mueller v. Mueller,* 165 Or. 153, 105 P. (2d) 1095 (1940),

"The evidence does not preponderate decisively in favor of one or the other. Neither of them can be

said to have been very slightly and the other very greatly, at fault."

In that case this court found that both husband and wife had materially contributed to the discord which prevailed in their home and held that neither party was entitled to a divorce.

The social wisdom of the doctrine which, because of mutual fault, continues the marriage status as a matter of law when it has necessarily ended as a matter of fact has been the subject of severe criticism in recent days, but this court is committed to the doctrine that a plaintiff cannot have relief in equity unless he comes to court with clean hands, and if it ever is to be applied in a divorce case we think it should be done here.

Neither party is entitled to a decree of divorce. The decree of the circuit court is reversed, except as to that portion which adjudged that the plaintiff pay to the defendant as attorney's fees the sum of $200, which portion is affirmed. Neither party will recover costs.